BARGER *v.* BISSELL.

1. ESTOPPEL—ISSUES ON RETRIAL—RES JUDICATA.

Counsel's accepting, in the argument of a case, as established, a fact proven by opposing witnesses detrimental to their theory, which as the record stood they could not successfully question, does not in itself work an estoppel to an issue upon that fact on a subsequent trial, where their theory and claim as to the specific act of negligence remain unchanged.

2. SAME—INCONSISTENT CLAIMS—ISSUES ON RETRIAL..

In an action for personal injuries caused by defendant's automobile, counsel's acceptance of the fact that a wagon obstructed the view of the driver of the automobile, on the first trial, while on the second trial said fact was controverted, does not render plaintiff's claims inconsistent, where in each case the driver's neglect to see plaintiff and stop his car in time to avoid the accident was relied upon.

3. SAME—FAILURE TO CALL WITNESS—PLAINTIFF AS WITNESS.

In an action for personal injuries to a child about seven years of age, caused by defendant's automobile, where the extent of plaintiff's permanent injuries was in dispute, failure to call plaintiff as a witness on the first trial on account of her claimed physical and mental condition as a result of the accident, together with her youth and immaturity, does not estop her from testifying on the second trial upon any issue authorized by the pleadings,

4. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — AUTOMOBILES — INFANTS—QUESTION FOR JURY.

Where plaintiff, in an action for personal injuries caused by defendant's automobile, was less than seven years of age, at the time of the accident, her age and degree of developed judgment, together with her testimony that the driver of the car saw her when 25 feet away, render the question of her contributory negligence one of fact for the jury.

5. TRIAL—WEIGHT OF EVIDENCE—QUESTION FOR JURY.

What weight should be given testimony is primarily for the jury.

6. APPEAL AND ERROR—NEW TRIAL—WEIGHT OF EVIDENCE.
    Whether a verdict is against the great weight of evidence,
       under all the circumstances of the case, is primarily for
       the trial court.

7. SAME—QUESTIONS REVIEWED—JUDGMENT NON OBSTANTE VERE-
    DICTO.
    On a record showing that the order of the trial judge
       granting a new trial was by consent of counsel for both
       parties set aside, after which judgment of "no cause of
       action" was entered for defendant, the only question be-
       fore this court for review is the validity of such judg-
       ment, and this court, although reversing the judgment
       entered by the trial judge, will not reinstate the verdict
       of the jury.

Error to Wayne; Hosmer, J. Submitted June 7,
1918. (Docket No. 83.) Decided December 27, 1918.
Rehearing denied January 31, 1919.

Case by Orilia Barger, an infant, by her next friend,
against Edward W. Bissell for personal injuries.
Judgment for defendant *non obstante veredicto*. Plain-
tiff brings error. Reversed.

*Dohany & Dohany,* for appellant.

*Harrison Geer,* for appellee.

STEERE, J. On the 25th day of March, 1911, plain-
tiff, then six years, ten months, and ten days old, was
struck by the front right mudguard on defendant's
automobile while crossing Gratiot avenue in the city
of Detroit at a point between Townsend and Sheridan
avenues, a distance of about four miles from the city
hall towards Mt. Clemens, from whence defendant was
returning accompanied by some friends, with a chauf-
feur driving his automobile.

For a general understanding of the circumstances
of the accident and the then claims of the parties
reference is made to a review and reversal of a for-

mer judgment in this case reported in 188 Mich. 366. A retrial resulted in a judgment for defendant which is now here for review.

At the first trial plaintiff was not called as a witness owing, as her counsel states, to her physical condition and tender age. Aside from her testimony the evidence in this record is substantially the same as upon the first trial, that of some of the witnesses being introduced from the former record by consent. The new feature in the case is plaintiff's testimony as to the exercise of vigilance on her part and absence of any conveyance to obstruct the vision. She testified upon this trial that she was attending school when injured, went from school to visit her aunt who lived above Michael's grocery store and was making a dress for her; that her aunt accompanied her down stairs to the sidewalk, "looked up and down" and told her to go across the street, which she started to do and when about a foot away from the curb she also looked up and down the street, but did not see anything from either way except a street car between Field and Sheridan avenues some distance off, and "there was no horse and wagon or automobile or anything of that sort in front of Michael's store"; that she then started across the street in a slanting direction towards Sheridan avenue and as she came out from the curb an automobile attracted her attention by "blowing their horn," when she was "about the middle, between the street car track and the curb"; that she saw it was about 25 feet away and "kept walking on"; did not hear it any more but "somebody yelled" to her, when she then looked to the east "and saw it was right on top of me" and it struck her when she was "just in the first street car track," injuring her head and left side from which she was in bed about two months, after which she was "up but did not walk around," and first began to go to school again in September. On

suggestive question by her counsel as to her attending school in May and June she replied she thought that she went some days, saying, "my best judgment is six or seven days." On cross-examination she testified that in going to school at that time she had to cross Gratiot avenue twice a day, going and coming, knew there were two street car tracks along it, was familiar with the danger of getting in front of an automobile and that she had to look out for those automobiles, and knew the necessity of watching for cars that went up and down the street. In *Trudell* v. *Railway Co.*, 126 Mich. 73 (53 L. R. A. 271), it is said that intelligence, not age, controls the question of contributory negligence, citing *Henderson* v. *Railway Co.*, 116 Mich. 368.

Sister Emalinda, a teacher in St. Anthony school which plaintiff was then attending, testified that plaintiff was a pupil in her grade during that school year, from September, 1910, until school ended in June, 1911, except as absent on account of her accident; that witness heard of the accident and plaintiff returned to school about three weeks later, was absent more days in April than in March, but she attended quite regularly in May and June, saying:

"I did not notice any change in her physical or mental condition in the month of May or June. I had learned of her accident and that she had an injury. I did not notice any change in her mental condition during May and June compared with what it had been before. She returned again in September, in the fall of 1911. * * * I can say nothing else but that she was just as normal after coming back to school as before. She returned the latter part of April and I recollect distinctly outside of the book, during the months of May and June, 1911, she was quite regular."

Mrs. Helen Hopp, who was not a witness on the former trial, was sworn for plaintiff and testified that at the time of the accident she was employed in Michael's

grocery store; that she was in the store when it happened and did not see it but heard of it immediately after and went out, saying, "As soon as I saw the people running I went out immediately on the street, I ran out." Asked if Mr. Michael had a grocery wagon with a top on it at that time, the question was objected to on the ground that no one had testified the wagon standing there, which it was claimed obstructed the chauffeur's view of plaintiff, belonged to Michael. To this objection the court said, "I think that is so." She, however, answered that Mr. Michael had no grocery wagon with a top on it and was then asked—"Q. When you came out of the store was anybody's wagon in front of the store?" Which was objected to and the objection sustained. She was then asked but not permitted to answer the following questions:

"Q. Whether or not when you got out there there was any grocery wagon or anything standing in front of Michael's store with a horse hitched to it?

"Q. Was there any wagon of any sort, or automobile at the curb in front of Michael's store, or in that neighborhood when you went out there?

"Q. How recently before the accident happened had you been out in front of the store to see whether or not there were any wagons there?"

Plaintiff's counsel then said his further proof would be along the same line which in view of the ruling of the court he would not offer.

In sustaining the objections to these questions the court said, "there is no presumption that a wagon would stand there, or continue standing there."

At the close of the testimony a request for directed verdict in behalf of defendant was denied and the case submitted to the jury under a clear and well-guarded charge as to negligence, contributory negligence, etc., resulting in a verdict of $1,500 for plaintiff.

Thereafter and before entry of judgment on this verdict defendant's counsel served notice upon opposing counsel that by direction of the judge who presided at the trial argument would be had before him on November 10, 1917,—

—"upon defendant's request for a directed verdict filed before submission of said cause to the jury and for the entry of judgment in the above entitled cause, in defendant's favor in accordance with defendant's said request, notwithstanding the verdict heretofore rendered in said cause."

On the date for which notice was given counsel were heard and defendant's application denied, the court saying:

"This comes before the court upon a motion to enter a judgment for defendant *non obstante veredicto*, and if this motion is to be refused, to grant a new trial on the ground that the verdict is against the weight of evidence. There can be but one answer to this last proposition. There is no difference in the testimony brought by the plaintiff to support her case, between this trial and the trial which has been reviewed by the Supreme Court of this State, save that she herself testified on the last trial and has never been heard before. The very immaturity upon which the plaintiff relied to take the case to the jury would militate against credence being given to her testimony, and under these circumstances the court would have but one course, and that is to grant a new trial on its own motion. The other questions which are raised by the first motion are more difficult. It cannot be said as a matter of law that the examination of the plaintiff at the present trial can conclusively show that she had sufficient maturity at the time of the accident to allow the ordinary rules with reference to contributory negligence to control, and I am not disposed to say there is sufficient evidence before the court to enter a judgment for this reason. Now, when the plaintiff's testimony is considered, can I say there is not a scintilla of testimony to go to the jury, although if the

testimony were the same on the succeeding trial, I should feel compelled again to grant a new trial.

"Counsel, in further support of his motion, has urged that there has been a complete change in the theory of the plaintiff. It does not seem to me that the cases which counsel have cited here are apposite. The plaintiff has never testified before and while the testimony of the witnesses for the defendant showed beyond question the presence of a wagon at the curb I cannot say that the plaintiff is bound by their testimony.

"For these reasons the motion to enter a judgment will be refused."

Later, and next so far as the record discloses, the following order was made and a formal judgment entered for defendant:

"Upon the trial of this cause, at the close of the testimony, and before the case was submitted to the jury, defendant requested the court for a directed verdict in his favor. The case was submitted to the jury and a verdict was thereafter rendered for plaintiff. After the verdict was recorded and before the entry of judgment, defendant, with the approval of the court, gave plaintiff notice that arguments would be heard by the court for and against said request for a directed verdict, and the arguments were had on the 10th day of November, 1917.

"Thereafter, on November 26, 1917, the court entered an order granting a new trial in the case. By consent of counsel for the respective parties it is hereby ordered that the aforesaid order granting a new trial be set aside.

"It now appears to the satisfaction of the court, and the court decides, as a matter of law, that the defendant was entitled to a directed verdict on his motion for judgment notwithstanding the verdict, therefore,

"It is ordered that a judgment of 'no cause of action' be entered for the defendant."

As the situation is presented by this record the question for review is the validity of this judgment entered for defendant as on directed verdict, apparently on the ground that the decision of this court upon the

former trial is conclusive. An issue is here raised by plaintiff upon a fact not then in dispute. There is now conflicting testimony in the case upon whether there was a grocery wagon in front of Michael's store which concealed plaintiff from the chauffeur's view until she passed into the street from beyond it. If his view was not so obstructed the questions of his negligence and her contributory negligence would clearly be questions for the jury. In the former case the presence of the grocery wagon there was not controverted. It was then shown by the undisputed testimony of several witnesses and assumed in the decision that a high-topped grocery wagon with horse attached stood on the side of the street in front of a grocery store between the automobile and plaintiff when she hurried out into the street. With the view from the automobile thus cut off it was held that under all the evidence in the case defendant was not shown guilty of actionable negligence in not sooner seeing plaintiff and stopping in time to avoid the accident.

It is said in defendant's brief that on the former trial plaintiff's counsel introduced testimony showing the presence of this obscuring high-topped grocery wagon, and that defendant's testimony conclusively corroborated it; that "it was the contention of the attorneys for plaintiff at that time as well as the defendant, that by reason of the horse and wagon standing in front of Michael's grocery store the view of plaintiff, also that of the chauffeur was cut off," and it is urged that plaintiff's attorneys cannot upon the second trial change their theory from that taken on the first trial, and show there was no horse and wagon standing in front of the grocery store. On the part of the plaintiff it is denied that any of her witnesses testified to this grocery wagon being there, or that any testimony was introduced in her behalf by her

counsel to that effect, although defendant and his
chauffeur, called for plaintiff under the statute for
cross-examination, to prove ownership, agency, etc.,
volunteered such testimony; that the fact was not
claimed to sustain plaintiff's case, and this court in
its former opinion entirely disregarded the testimony
of defendant's witness Mrs. Boss, tending to negative
the fact.

An examination of the record and briefs of the for-
mer trial does not fully sustain the contention of either
counsel. During the trial plaintiff's counsel were not
seeking to prove or claiming as part of their proofs
that the wagon was there. No witness of plaintiff's
was interrogated by them upon the subject or so testi-
fied, except as defendant and his chauffeur, called by
them under the statute and by whose testimony plain-
tiff would not be bound, volunteered and adhered to
the claimed excusing fact. Mrs. Boss was not exam-
ined on that subject by plaintiff's counsel, but on cross-
examination by defendant's counsel as to whether she
saw any teams or wagons along the north side of
Gratiot avenue replied that she did not notice any,
and when the subject was pressed answered she did
not see any wagons or vehicles of any description
along there between Townsend avenue and the place
where the little girl was struck—adding, "I would not
swear to it, I didn't see any." Of the probative value
of such negative testimony against positive affirma-
tive testimony of witnesses who have observed and
testify to the fact, it may be noted that she also testi-
fied she did not hear the horn of defendant's automo-
bile blown or see any car down the street further
away, to both of which facts plaintiff herself testifies
in this case. On the former appeal defendant was
appellant and his counsel's brief was filed first, con-
taining a statement of facts as required by the rule.
On the first page of the brief of plaintiff's counsel un-

der the heading "Additions and amendments to statement of facts," the following appears in reference to the grocery wagon:

"Defendant's chauffeur saw plaintiff passing out of the doorway, * * * saw her pass out of his view behind the grocery wagon and saw her come out in front of the horse into the street. At this time the chauffeur was just back of the wagon and the front of the automobile even with the rear of the wagon."

This court in the former opinion not only accepted the statements in the briefs of counsel on both sides that the grocery wagon was where the undisputed testimony of several witnesses located it, but was and is of the opinion that counsel in their statements and the court in accepting them properly disregarded the testimony of Mrs. Boss, that she did not see or notice any wagon there, but "would not swear there wasn't any," as not of sufficient probative force, standing alone against the affirmative evidence, to raise a question of fact. But counsel's accepting in the argument of a case as established a fact proven by opposing witnesses detrimental to their theory, which as the record stands they cannot successfully question, does not in itself work an estoppel to an issue upon that fact on a subsequent trial where their theory and claim as to the specific act of negligence remain unchanged.

A careful comparison of the briefs and records in both cases does not sustain defendant's contention that plaintiff's theory and claim of the basic fact to establish negligence on this trial, are changed or inconsistent with the former. In the former case and this, counsel's theory and claimed ground of negligence are that at the rate of speed the automobile was going when the chauffeur saw or could and ought to have seen plaintiff, he could and should have stopped the automobile in time to avoid the accident. Manifestly

the presence of the intervening grocery wagon was detrimental to that theory, but in the absence of testimony to the contrary and accepting its presence as shown, counsel contended that nevertheless the chauffeur saw or could and ought to have seen plaintiff in time to avoid the accident had he acted with reasonable promptness. In this case, with testimony raising an issue of fact as to whether the grocery wagon was there, the same theory is urged and claim made. That it is narrowed by the former opinion to the contingency of that issue of fact does not create an inconsistency.

Plaintiff was present in court during the former trial but was not called as a witness. It is claimed for defendant that she was then eight years old and in normal condition, necessarily knew the facts as well at that time as when she testified upon the second trial several years later and her silence at the first trial when the material fact she now denies was proven against her estops her from testifying upon the second trial to supply fatal omissions in her proof pointed out in the former opinion. The force of this contention is largely contingent on disputed facts which this court cannot pass upon. Plaintiff's counsel contend that her physical and mental condition resulting from the accident, in connection with her youth and immaturity, then precluded her being called as a witness, as the evidence of her physician Dr. Knaggs, who attended her at the time of her injury, shows. Without going into details, the record shows that Dr. Knaggs, who stated he had again examined her that day, testified to apparently permanent injuries resulting from the accident, both mental and physical, indicated by her ænemic condition, exaggerated heart action, shattered nerves and unbalanced mentality; while Dr. Shurly, who also examined her at the time of her accident and during the trial, called by defendant, tes-

tified that he had carefully examined plaintiff and while she was slightly ænemic, as many children are at the growing period of life, she had a fairly well nourished body and said that, aside from a scar over her eye, "there is absolutely no permanent injury to that child in any possible form or manner."

All that need, or can, be said here of this irreconcilable testimony of the two physicians is that from it this court cannot say as a legal conclusion based on undisputed facts that failure to call plaintiff as a witness on the first trial estops her from subsequently testifying in a trial *de novo* upon any issue authorized by the pleadings.

Of the cases cited to sustain defendant's contention on this question it can be said without reviewing them at length that they relate to retrials where in support of an inconsistent change of theory the testimony of plaintiffs, or their witnesses by whose testimony they are bound, is directly contradictory to that given by them on a previous trial. Such is not the situation here. It is further urged for defendant that this judgment should be sustained because as a matter of law plaintiff is shown by her own testimony to have been guilty of contributory negligence. Not only is her age and degree of developed judgment at the time of the accident involved in that inquiry, but her testimony as now given with precision shows that the driver of the approaching automobile sounded his horn, indicating that he saw her when 25 feet away and, with room to safely pass behind her on the side of the street along which he was driving, struck her when she was at the street car track 16 feet from the curb.

The conclusion is unavoidable that the conflicting evidence on this trial carried the case to the jury. What weight should be given her testimony is primarily for the jury, and whether a verdict is against

the great weight of evidence under all the circumstances of the case is primarily for the trial court.

Counsel for plaintiff request not only that the judgment be reversed but that this court direct the trial court to reinstate the verdict of the jury, with instruction to enter judgment thereon. That this court cannot do upon this record. The judgment brought here for review cannot be sustained for the reasons above given. It is therefore reversed, with costs to abide the final event of this action, and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.