TRUESDELL *v.* MICHIGAN RAILROAD CO.

1. APPEAL AND ERROR—QUESTIONS FOR REVIEW.

In an action against a railroad company for the contract price of certain ties, where the issue of fact raised by the testimony was decided in favor of plaintiff, the only question before the appellate court is whether there was proof to sustain plaintiff's contention; the weight of the evidence not having been raised by motion for new trial.

2. EVIDENCE—SUFFICIENCY.

Evidence on part of plaintiff, *held,* sufficient to support the verdict rendered.

3. SAME—SELF-SERVING EVIDENCE.

Memoranda made in defendant's office at the time it made a payment to plaintiff, indicating that it was applied on a certain contract, was properly rejected, when offered in evidence, on plaintiff's objection that his attention was not called to it at the time it was made, and that it was self-serving.

Error to Ingham; Carr (Leland W.), J. Submitted October 24, 1923. (Docket No. 106.) Decided December 19, 1923.

Assumpsit by Clyde J. Truesdell against the Michigan Railroad Company for the purchase price of certain railroad ties. Judgment for plaintiff. Defendant brings error. Affirmed.

*Justin R. Whiting* (*Benjamin Kleinstiver,* of counsel), for appellant.

*Thomas, Shields & Silsbee,* for appellee.

BIRD, J. This suit was begun to recover the contract price of certain railroad ties sold by plaintiff to defendant. The suit involved four separate sales

or transactions, only one of which is involved in this appeal.   It appears that plaintiff was engaged in the business of buying timber and manufacturing it into railroad ties.   The parties had dealt together for several years.   It is plaintiff's claim that in the winter of 1919-20 he purchased a small tract of timber on the Weaver farm near Pine Lake on defendant's railroad, and sawed it into ties.   After they were sawed plaintiff offered them to defendant.   Later he and Mr. Sanderson, defendant's engineer, went to the Weaver farm and examined the ties, and after some talk concerning the quality and price Sanderson agreed to take 2,769 of the 3,019 ties on the ground, and pay therefor $1.35 for 2,500 of them, and $1.30 for 269; 250 of them he refused to buy; the same to be delivered to defendant at the loop at Pine Lake.   Plaintiff finally accepted this offer and soon thereafter delivered the ties to defendant at the place designated. After delivery plaintiff notified defendant that the ties had been delivered and requested payment therefor.   In response to this information he received no answer.   Later, while on his way to Detroit, he stopped at Jackson and, at his request, received $135 to apply on this deal.   After an interim of about four months defendant insisted upon an inspection and a rejection of a quantity of them because of quality. Not being able to effect a settlement, plaintiff began this suit to recover the contract price.

The position taken by defendant was that it purchased the ties on a written order made on March 15, 1920.   That this order fixed the price and provided for the standard inspection.   It was further claimed by defendant that it endeavored to get plaintiff to join in the inspection, but he refused to do so. That a large number of the ties were red oak, which were not deliverable under the written order, and that for these reasons it never accepted the ties.   The matters were tried out and submitted to a jury, and

they returned a verdict for the plaintiff. The defendant assigns error only on the Pine Lake deal.

1. The principal difference between the parties lies in this: Defendant contends that these ties were delivered upon the written order which was made in the early spring. This order, in form, is as follows:

"Material Order.
                    "MICHIGAN RAILROAD COMPANY,
                         "Jackson, Mich.
                                        "March 15, 1920.
                                        "Order No. 2438.
                         "Put this No. on your invoice.
"C. J. TRUESDELL,
     "DeWitt, Michigan.
     "Please enter our order as below, subject to instructions on back hereof, to be
     "Shipped via..........to Michigan Railroad Company at our right-of-way.
        "Quantity.                         Description.
     "5000 to 6000 6-inch x 8-inch x 8-ft. white oak crossing ties (sawed) at $1.35 each No. 1 ties.
     "Delivered on our right-of-way.
     (Subject to standard inspection on delivery.)
     "For delivery before June 1, 1920.
     "Cons-93.
     "Mail invoice promptly to us at Jackson, Michigan.
                    "MICHIGAN RAILROAD COMPANY,
                         "By H. K. SHERMAN,
                              Purchasing Agent.
     "Please send first of each month, an itemized statement of account."

Defendant further insists the ties were never inspected as provided in the order, quite a large percentage of them were red oak, that they were never accepted and that the oral contract contended for by plaintiff was within the statute of frauds. Defendant further contended that while deliveries were to be made under the written order by June 1st, the contract was treated by both parties as still in force.

Plaintiff concedes the written order was made, but says that the order had expired because the date for

delivery was fixed as June 1, 1920. The date on which he and Sanderson inspected the ties and made the contract was October 22, 1920, and that this bill was a separate, independent one, and was not included in the written order, and that the oral agreement was not within the statute of frauds, because a part payment was made thereon, and because the ties were delivered to and accepted by defendant by its neglect to raise any question concerning them until more than four months had elapsed after delivery.

It will be seen from the nature of the controversy that it involved questions of fact. It involved the question as to whether the ties were delivered on the written order or whether it was a separate, independent contract. It involved the question whether there had ever been any acceptance of the ties under either theory, and it involved the question whether the $135 advanced was to be applied to the Pine Lake deal, as plaintiff contended, or on the DeWitt deal, as the defendant contended. Defendant has argued these questions of fact in a very lengthy brief the same as though we were a jury. The only question before us on the facts is, Was there proof to sustain the contention of the plaintiff? The weight of the testimony is not before us, as that question was not raised in its motion for a new trial. These questions were submitted to the jury in a very full and lucid charge by the trial court, and they have determined the matter, evidently accepting plaintiff's claims concerning the contract. We think the testimony adduced by the plaintiff was amply sufficient, if believed, to support the verdict which the jury rendered.

2. As bearing on the question upon which deal the payment of $135 was to be applied defendant offered in evidence the memoranda made in its office when the check for $135 was given plaintiff. Objection was made that plaintiff's attention was not called to the paper at the time it was made, and that it was self-

serving. The objection was sustained and error is predicated on its rejection. Defendant's proofs disclosed that plaintiff's attention was not called to the memoranda at the time it was made, and it did not appear that it was such a memoranda as was usually made in such matters in the course of its daily transactions. The attempt to identify the memoranda was by Mr. Sanderson, who did not make it. In view of these considerations we think the ruling was correct, but whether it was or not is not of great importance, since Mr. Sanderson testified in full with reference to plaintiff's requesting the money and the fact that it was paid to him to apply on one of his DeWitt contracts and was not paid to apply on the Pine Lake contract.

The judgment of the trial court is affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.