## HUBBELL v. NORTH AMERICAN UNION.

APPEAL AND ERROR—ERROR NOT PREJUDICIAL.

> In an action on a life insurance policy contested by the company on the ground that insured had syphilis at the time the application was made, rendering the policy void, refusal to strike out a statement volunteered by plaintiff, in response to a proper question on cross-examination, that the other insurance companies had paid, *held*, not so manifestly prejudicial as to necessitate a reversal. CLARK, FELLOWS, and WIEST, JJ., dissenting.

Error to Muskegon; Vanderwerp (John), J. Submitted January 20, 1925. (Docket No. 79.) Decided April 24, 1925.

Assumpsit by Fannie D. Hubbell against the North American Union on a policy of life insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Matt N. Connine* and *David B. Maloney,* for appellant.

*Alex Sutherland,* for appellee.

WIEST, J. *(dissenting).* August 9, 1911, upon the written application of John W. Hubbell of Muskegon, defendant society issued its certificate insuring his life for $1,000 with plaintiff named beneficiary. Mr. Hubbell died October 6, 1922; proofs of death were made and defendant refused to pay. This suit was brought on the certificate by the beneficiary, and her claim contested by defendant on the ground that Mr. Hubbell had syphilis at the time he applied for the insurance and perpetrated a fraud, voiding the cer-

tificate, by his warranty in his application that he was in good health and did not then have and never had had syphilis, when in fact he then had the disease and his death 11 years later was occasioned thereby. The issue was tried to a jury, and verdict, with judgment thereon, rendered for plaintiff.    Defendant reviews by writ of error.

The question of whether the statement of the insured in the application constituted a representation of a warranty needs no elucidation or answer, for the learned circuit judge instructed the jury that, if untrue in fact, there could be no recovery, and defendant could ask no more under the doctrine of warranty. Mr. Hubbell, some months before his death, had locomotor ataxia and died of paretic dementia.    His death was occasioned by syphilis.    Whether he had hereditary or acquired syphilis was a fact for the jury to determine.    If the syphilis was hereditary, or was acquired before the application for the insurance was made, then the policy was void.    If acquired after the application for the insurance, defendant is liable.    We may infer from the verdict of the jury a finding that the insured acquired syphilis after he was insured.

In support of its affirmative defense defendant had to show something more than that the insured had syphilis at the time of his death; it had to show he had syphilis at the time of the application.    In the proofs of death submitted to defendant by plaintiff, she made affidavit she had read the affidavit of the attending physician and submitted the same as a true statement of the facts pertaining to the death of the insured.

The physician attending the insured during his last illness stated in his affidavit that paretic dementia was the final cause of death of the insured, and the primary or predisposing cause was locomotor ataxia

complicated with hereditary syphilis, and that paretic syphilis appeared about 30 days before death.

It is claimed such proofs of death, furnished by plaintiff, established, *prima facie,* the defense of hereditary syphilis. *Prima facie,* the proofs of death, furnished by the beneficiary, defeated plaintiff's claim, for if he had hereditary syphilis he had it at birth. Defendant had the burden of establishing the affirmative defense and the proofs of death constituted evidence in support of such defense. This evidence, however, was open to explanation by plaintiff, and the opinion of the physician corrected, if he was mistaken in his assumption of facts, and the correctness of his deductions tested by the information he possessed. We do not understand that doctors claim to be infallible. Doctors sometimes have to surmise what lies back of the disclosed and such deductions may not always be right.

The doctor was a witness at the trial and testified:

"In my report there, in answer to the question, what was the contributing cause, or something of that sort, I said I thought it was hereditary syphilis. I had no special knowledge to base that opinion on, only from deduction. * * * A long, drawn-out disease, and then I personally could not get any evidence of any date that he had contracted the disease itself.

"Q. Well, then, do I understand you, doctor, that you had any actual knowledge as to whether it was hereditary or acquired?

"A. I did not. * * *

"Q. And doctor, when you examined Hubbell and made your diagnosis, you diagnosed it as hereditary syphilis based upon the facts which you observed and your knowledge as a physician and your knowledge of the case?

"A. And the history.

"Q. And when you made the proof of loss you put down here hereditary syphilis as your diagnosis of the case?

"A. Yes.

"*Q.* And that was your diagnosis of the case, was it not?

"*A.* That is as near as I could come to the facts."

At the time of his death Mr. Hubbell was 47 years of age.    In 1920, when he was 45 years of age, his illness appeared.    In 1911, when he was 36 years of age he made the application for insurance.    If the jury accepted the opinion of Dr. Risk, that a man 40 years of age would not develop locomotor ataxia from hereditary syphilis, then, even though such opinion was against the weight of evidence on the subject, the verdict must stand for there was no evidence of syphilis acquired before the date of the application and no motion for a new trial on the ground that the verdict was against the weight of evidence.    In the absence of a motion for a new trial, presenting the question to the trial judge, this court cannot make review to determine whether the verdict is against the weight of evidence.    *Marsh* v. *Rogers,* 226 Mich. 290; *Truesdell* v. *Railroad Co.,* 225 Mich. 375.

Defendant insists the evidence furnished by the proofs of death could only be met by a showing of no hereditary syphilis.    We think the attending physician explained the reason why he diagnosed the disease as hereditary syphilis, and this with the testimony of Dr. Risk left the subject to the jury.

In *John Hancock Mutual Life Ins. Co.* v. *Dick,* 117 Mich. 518 (44 L. R. A. 846), it was contended that the court must find the insured died from typhlitis inasmuch as the beneficiary so claimed in the proofs of death.    The court stated:

"We have no doubt that the proofs of loss should be treated as evidence of the fact stated, being in the nature of an admission; but it is subject to explanation, and cannot have the effect of an estoppel, when made upon information received from the attending physician, and in good faith."

See, also, *Wasey* v. *Insurance Co.*, 126 Mich. 119; *Haapa* v. *Insurance Co.*, 150 Mich. 467 (16 L. R. A. [N. S.] 1165, 121 Am. St. Rep. 627); *Krapp* v. *Insurance Co.*, 143 Mich. 369 (114 Am. St. Rep. 651); 5 Joyce, Law of Insurance (2d Ed.), §§ 3319, 3772; *Hanna* v. *Insurance Co.*, 150 N. Y. 526 (44 N. E. 1099).

Upon introduction of the proofs of death, defendant claims the burden of proof shifted to plaintiff. This question was presented in *Home Benefit Ass'n* v. *Sargent*, 142 U. S. 691 (12 Sup. Ct. 332). In that case the beneficiary made the statements of a physician, of the cause of death, a part of her proofs of death. The trial judge in that case instructed the jury that the burden was upon the insurance company to establish the affirmative defense pleaded and that the proofs of death were proper evidence in support of such defense "but were by no means conclusive evidence, and were to be taken by them in connection with the other testimony in the case, and given such weight in determining the main question as the jury might see fit to give them." The court stated:

"It is contended for the defendant that, because of the contents of the proofs of death, the plaintiff is estopped from claiming that Hall's death was caused otherwise than by suicide; and that, at least, the court should have held that the burden originally upon the defendant was shifted, by the introduction of the proofs of death, to the plaintiff, and it became her duty to satisfy the jury, by a preponderance of evidence, that Hall died otherwise than by his own hand.

"But the defendant was not prejudiced by the statements and opinions contained in the proofs of death, and the plaintiff was not estopped thereby, as a matter of law. When the court was asked to charge the jury that by the introduction of those proofs the burden was shifted, the evidence was all before the jury, and was much more full and complete than that

upon which Dr. Jenkins had based his opinion. He himself had been examined as a witness, and had testified as to what he knew or did not know at the time he made his certificate, and all the facts of the case, so far as they were known, had been explained in view of the contents of the proofs of death."

Upon the subject of burden of proof and whether it shifted upon introduction of the proofs of death, we note the following request for instruction to the jury preferred by defendant:

"The court instructs the jury in this case if you find from a preponderance of the evidence and under the instruction of the court that the insured, John W. Hubbell, was at the time of making application to the North American Union in July, 1911, infected with syphilis, your verdict shall be for the defendant."

We think the proofs of death constituted evidence in support of the affirmative defense, and in the absence of explanation barred the beneficiary from recovery, but such proofs could be explained, and as explained sent the question to the jury and did not relieve defendant from the burden of establishing its defense by a preponderance of the evidence.

Under the evidence the burden of the affirmative defense remained with defendant and the trial judge was right in refusing to direct a verdict in its favor.

Defendant requested the following instructions:

"The court instructs the jury that the plaintiff was required to file with the North American Union proofs of death of said John W. Hubbell. And you are further instructed that the admissions and statements contained in the proofs of death in evidence in this case are evidence of the facts therein stated.

"The court instructs the jury that as a matter of law, where a party has in writing admitted a certain thing to be a fact, such statement is properly considered by you as part of the evidence in this case."

Of course the jury understood that the proofs of

death were for consideration; they were admitted in evidence for such purpose and we may assume the importance thereof was emphasized by counsel in argument.

The court instructed the jury:

"If you find, gentlemen, by a preponderance of the evidence, that John W. Hubbell had syphilis, whether he knew it or not, on or prior to July 6, 1911, the date when he signed the application in this case, then your verdict should be for the defendant, no cause of action. If you find that the defendant has not established that on or prior to July 6th, John W. Hubbell had syphilis, then your verdict should be for the plaintiff for the amount I have mentioned, and, as I said before, to determine that question consider all the evidence in the case, the oral testimony of the witnesses and the testimony produced by the depositions in the case, and the exhibits in the case, including the application *and proofs of death*, and determine from all the evidence the question that I am submitting to you in this case."

We think this sufficiently covered the purpose of the requests.

On cross-examination plaintiff was asked:

"*Q.* Mrs. Hubbell, you saw Mr. Hunt one time prior to last evening, did you not, in connection with this claim?

"*A.* I haven't seen Mr. Hunt since he came to my home and I refused the check that the North American Union sent. I told him I was entitled to my policy for a thousand dollars and the other companies had paid their claim and I was entitled"—

Motion to strike out the answer was denied. The last half should have been struck out. Does this establish reversible error? Plaintiff had no right to show settlement by other insurance companies, yet she injected such fact in the case, and it was left there over the motion of defendant to remove it. The question would be serious enough with it stricken out,

but with it left in, the jury had a right to understand they might make use of it, and such use could only operate to the prejudice of defendant.    This testimony would naturally give rise to the impression that defendant was opposing payment where others like situated confessed liability.

We dislike to reverse for such error, but we cannot pass it without concern, for if not reversible error in this instance, it will not be error in the next, and questions on cross-examination will place the party making proper inquiry at the mercy of a shrewd or crafty witness who will take advantage of legitimate questions to inject inadmissible testimony.

The judgment should be reversed, with new trial, and with costs to defendant.

CLARK and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J.    In my opinion the error complained of was not so manifestly prejudicial as to necessitate a reversal.

The judgment is affirmed.

MCDONALD, C. J., and BIRD, MOORE, and STEERE, JJ., concurred with SHARPE, J.