*In re* McCORD.

McCORD *v.* McCORD.

1. EVIDENCE—INSANE PERSONS—EXPERT TESTIMONY—CROSS-EXAMINATION.

In proceedings for the appointment of a guardian of the person and property of an alleged mentally incompetent person, there was no error in permitting a psychiatrist, on cross-examination, to answer the question as to whether certain whims, violent changes in emotion, a certain change from being pleased and pleasant to a fit of rage or anger would be taken into consideration in forming a professional opinion as to incompetency.

2. APPEAL AND ERROR—QUESTION NOT RAISED IN TRIAL COURT NOT CONSIDERED ON REVIEW.

Where no objection was made in the trial court to the propounding of a hypothetical question, an assignment of error based thereon may not be considered by the Supreme Court.

3. TRIAL—FACT TESTIFIED TO MAY BE EMBODIED IN HYPOTHETICAL QUESTION ALTHOUGH DENIED.

Where a witness testified to a certain fact, it was proper to embody it as one of the assumed facts in a hypothetical question, notwithstanding it was denied by another witness.

4. INSANE PERSONS—CONTRADICTORY EVIDENCE PRESENTED QUESTION OF INCOMPETENCY FOR JURY.

Evidence on the question of incompetency, *held*, to present a question of fact for the jury, although practically all of the testimony in support thereof was denied by the alleged incompetent or other witnesses.

5. SAME—VERDICT NOT AGAINST LAW OF CASE.

A verdict of incompetency *held*, not in violation of the law of the case, as given in the charge of the court, to which no objection is made in the record.

6. SAME—TRIAL—WHETHER VERDICT AGAINST WEIGHT OF EVIDENCE
   PRIMARILY FOR TRIAL COURT.

> Where an alleged incompetent person was before the trial
> court and gave her testimony, the circuit judge had an
> opportunity not afforded to the Supreme Court to form
> a judgment as to whether the verdict of incompetency
> was against the great weight of the evidence, and therefore
> the instant case is peculiarly of the type wherein said
> question is primarily for the trial court.

7. APPEAL AND ERROR—NEW TRIAL—GREAT WEIGHT OF EVIDENCE—
   MOTION FOR NEW TRIAL NECESSARY TO REVIEW.

> In the absence of a motion for a new trial, the Supreme
> Court may not consider whether the verdict was against
> the great weight of the evidence.

8. SAME—SUPREME COURT SHOULD SET ASIDE VERDICT ONLY WHEN
   AGAINST OVERWHELMING WEIGHT OF EVIDENCE.

> The Supreme Court should set aside a verdict only when
> it is against the overwhelming weight of the evidence,
> and the fact that it would have reached a different con-
> clusion than the jury is not controlling.

Error to Wayne; Hart (Ray), J., presiding. Sub-
mitted January 5, 1928; resubmitted March 27, 1928.
(Docket No. 85, Calendar No. 33,427.)    Decided July
24, 1928.

Petition by Mabel Gilmore against John L. McCord
to set aside an order appointing a guardian of the
person and property of Dora McCord, an alleged
mentally incompetent. There was an order granting
the petition, and defendant appealed to the circuit
court. Judgment for defendant. Plaintiff brings
error. Affirmed.

*Barstow, Daines & Barstow* and *Andrew Baird,* for
appellant.

*Ralph S. Moore* and *Marvin A. Smith,* for appellee.

NORTH, J.    In October, 1926, John L. McCord, the

appellee herein, filed a petition in the probate court of Wayne county, in which he asked to have a guardian appointed of the person and estate of his mother, Dora McCord. Mrs. Mabel Gilmore, a daughter and the only other living child of Mrs. McCord, signed a waiver of notice of the hearing, and in effect joined in the petition. Service was made on Mrs. McCord. On the day set for hearing, the petitioner appeared in support of the application, and, there being no opposition thereto, Dora McCord was found to be an incompetent, and the Security Trust Company was appointed guardian of her person and property. About a month later the daughter, Mrs. Mabel Gilmore, filed a petition in the probate court asking that the order appointing the guardian be set aside. In her petition she recited that she consented to the former proceeding "through inadvertence." After proper notice this second petition was brought on for hearing, Mrs. McCord was found mentally competent, and the former order appointing the guardian was set aside and vacated by the probate judge. The defendant herein, John L. McCord, appealed from the order of the probate court to the circuit court, the case was tried by a jury, and Mrs. McCord was there found to be incompetent. Thereupon judgment was entered as follows:

"That said Dora McCord be adjudged mentally incompetent to have the care, management, control and custody of her person and property and that the Security Trust Company, guardian of said Dora McCord, be and is hereby continued."

The alleged incompetent has brought the case to this court by writ of error.

Mrs. Dora McCord was the wife of Charles McCord. They lived together as husband and wife for nearly 50 years, and accumulated a substantial amount of property, which consisted mainly of three apartments in the city of Detroit of the value of $55,000 or more,

which produced a gross income varying from $1,000 to $1,200 per month; and of real estate in the city of Toledo, Ohio, of substantial value. Mr. and Mrs. McCord held title to the Detroit properties as tenants by entirety. He died on the 20th of August, 1926. There is some uncertainty in the record as to the age of Mrs. McCord, but she was between 65 and 69 years of age at the time of her husband's death. Loretta Dougherty is the granddaughter of Mr. and Mrs. Charles McCord, being the daughter of Mrs. Mabel Gilmore. Loretta was 18 years of age at the time of her grandfather's death. Her father died when she was about two years old, and from that time on she lived with her grandparents, and was practically brought up by them as their own child. It is the claim of Mrs. Dora McCord it was her husband's desire that the Detroit property should be given to Loretta. About a month after her husband's death Mrs. Dora McCord and Loretta went to the office of a real estate man who prepared three deeds, by which Mrs. Dora McCord conveyed to Loretta the three parcels of Detroit real estate. It appears from the record that Mrs. McCord supposed a provision was put into each of these deeds whereby she reserved a life estate in the property conveyed. This was not done; and it is now claimed, in explanation of the transaction, that the scrivener who prepared these deeds recommended that Mrs. McCord go to a lawyer to have the proper papers prepared for the purpose of securing a life estate to her. There is some testimony that the scrivener also suggested that Loretta should make a will in favor of her grandmother so that in the event of Loretta's death before that of the grandmother, title to the property would again be vested in Mrs. McCord. Neither the will nor the papers relative to the life estate were prepared; but this is explained by the fact that there was delay in securing for the attorney who was to prepare these papers the

descriptions of the parcels of land involved. Two of the above mentioned deeds were recorded, but the remaining deed had not been made a matter of record before the guardianship proceedings were instituted.

John McCord resided in New York; he was 42 years of age at the time of the trial, and he claims because of being summoned by long distance telephone by his mother he came to Detroit, October 15, 1926. Immediately upon his arrival he learned of the making of the deeds to Loretta. There is some conflict in the testimony as to just what happened, but there is proof that Loretta destroyed the one unrecorded deed, and that she executed two other deeds by which she attempted to reconvey the property to her grandmother. This was brought about by the rather vigorous insistence of John McCord. In the discussion of this matter between John and his mother, she insisted at first that she had not conveyed the property, and she at all times insisted that she had reserved to herself a life estate. As the result of these transactions John McCord made the application first above mentioned to have his mother declared incompetent and have a guardian appointed of her person and property.

It is insisted by Mrs. McCord and the daughter, Mrs. Mabel Gilmore, that they misunderstood the purport of the guardianship proceeding, and that they were misled and deceived by John into the belief that it was merely an application to have a trustee appointed to take charge of Mrs. McCord's property during the time she was to be absent on a proposed trip to Florida with her son, John. As soon as Mrs. McCord became aware of the fact of her having been adjudicated an incompetent, she evidently protested against the same, and the matter took the course hereinbefore indicated.

The bill of exceptions presents five assignments of error, as follows:

1. The court erred in overruling the objection made

by Mr. Baird, attorney for the plaintiff, to the following question:

"*Q.* Would certain whims, violent changes in emotion; a certain change from being pleased and pleasant to a fit of rage or anger be taken into consideration?"

This question was propounded on cross-examination to a psychiatrist, who had testified in behalf of the plaintiff as an expert witness. The question was asked relative to forming a professional opinion as to incompetency, and was answered in the affirmative; and clearly there was no error in permitting the question and answer to stand in the record.

2 and 3. Assignments of error 2 and 3 refer respectively to each of two hypothetical questions asked on direct-examination of expert witnesses produced by the defendant. Each of these questions covers substantially two and one-half pages of the printed record, and it would serve no good purpose to repeat them here. Notwithstanding the assignment of error as to one of these questions, the record discloses that no objection whatever was made in the trial court to its being propounded or to the answer made thereto. Assignments of error not based on a record made in the lower court cannot be considered. As to the other hypothetical question, the objection which the trial court overruled is as follows:

"*Mr. Baird.* Object because the hypothetical question is not based on a set of facts. My brother has said—I can only remember a few. He says that this mother had been in the habit of counseling and advising with her son. As a matter of fact the mother testified that she never consulted with her son; in fact he came to her for advice. I will also say that on the question of inability of the mother to identify the deeds, it was due to the fact that she did not have her glasses; she did not look at the deeds carefully."

Before this question was propounded the son had

testified to frequent occasions on which his mother had advised and consulted with him about her business affairs; and further he said: "All my life she has asked my advice on different matters." It was therefore perfectly proper to embody this as one of the assumed facts in the hypothetical question notwithstanding the mother had denied the same. *In re Rosa's Estate*, 210 Mich. 628; *Duffy* v. *Charters*, 180 Mich. 572. There is nothing else in the objection as made which is in any way meritorious or even in the form of a valid objection, and therefore the trial court was justified in overruling the same.

4 and 5. The principal question involved is covered by assignments 4 and 5, in which it is asserted that there is "no evidence in said cause that the plaintiff was an incompetent person within the meaning of the law;" and "that the verdict was in violation of the charge of the court as to the law governing the question of incompetency." Without attempting a full resumé of the testimony bearing upon the question of Mrs. McCord's incompetency, it will appear from the following references to the testimony that it was clearly a question of fact for the jury: There is proof that Mrs. McCord insisted even at the trial of this case that she had reserved a life estate to herself in the deeds to Loretta. Unquestionably this was not true. She positively denied her signatures on certain deeds, and shortly thereafter acknowledged them to be her signatures. There is also evidence that about a week after her husband's death she agreed with her son that a Mr. Stewart should have charge of collecting the rentals from the Detroit property, but within one or two days she refused to allow him to perform this service. Her son, John, testified that when he came to her home on or about the 15th of October, 1926, she did not recognize him; and he further said that his mother thereupon started raving and saying, "whatever I did, I did of my own free will; whatever I done I done it

of my own free will." The son claimed at that time his mother insisted that she had not deeded away any of her property but that she still owned it all; but when he finally informed ,her that she had deeded it away without reservation she stated that she wanted it deeded back to her. The son also testified that about this time on an occasion when a picture dropped from the wall, his mother said, "There, that was your father warning me in regard to the property;" and at another time after her husband's death she thought she heard a noise and said to her son, "That was your father in the bedroom counting that money," and, upon being asked what money, she said, "When your father died he had three sacks of money that high (indicating). I walked in and seen him counting it." John also testified that on one occasion Loretta said her grandfather came to her bedroom the night before and sat on her bed and talked with her all night; and thereupon Mrs. McCord said, "I wish I could have talked to him." John also testified that his mother told him that she could always see him coming on the train when he was on his way to Detroit from New York; and further he testified that in his mother's presence Loretta said to him, "I had to hide all the belladonna and aconite in the house because grandma wanted to commit suicide." John also testified that his mother wanted him to kill the husband of one of her deceased daughters because she thought he had misused her daughter during her lifetime, whereas there was no foundation whatever for this delusion; and further that because of some difference with a Mr. Stewart, his mother said, "I am going to have the little Italian peddler kill him; he will kill him for $200." Other instances of like character might be cited from the record. Practically all of this testimony given by John was denied by his mother or some other witness; and it must be admitted that one gets the impression from reading the record that much of

John McCord's testimony is rather incredible. Notwithstanding this, taken in connection with other corroborating testimony, it clearly presented an issue on this phase of the case for the determination of the jury. No complaint is made in the record about the charge of the court as given to the jury; and the verdict cannot be said to be in violation of the law as therein stated.

Except as it is a necessary inference included in counsel's fourth assignment of error that there is "no evidence that the plaintiff was an incompetent person," there is no claim that the verdict was contrary to the weight of the evidence. The sole issue in this case was the mental competency of Mrs. McCord. She, as well as the other witnesses, was before the trial court in giving her testimony; and therefore the circuit judge had an opportunity not afforded to this court to form a judgment as to whether the verdict was against the weight of the evidence. For this reason this case is peculiarly of the type wherein the contention that there is no proof to support the verdict or that the verdict is contrary to the great weight of evidence is primarily a question for the trial court. *Barger* v. *Bissell,* 204 Mich. 416. Notwithstanding this, the appellant did not make a motion for a new trial before perfecting her appeal. This is regrettable, because the reading of her testimony from the printed record produces a rather strong conviction of her mental competency. But the trial judge denied the appellant's motion for a directed verdict at the close of the proofs, thereby ruling that the case presented an issue of fact arising from conflicting testimony as to Mrs. McCord's competency. The verdict having been adverse to Mrs. McCord, and a motion for a new trial not having been made, we cannot consider the question as to whether the verdict was against the weight of evidence. *Clarke* v. *Case,* 144 Mich. 148; *Truesdell* v. *Railroad Co.,* 225 Mich. 374; *Taylor* v. *Goldsmith,* 228 Mich. 259; *Kauf-*

*man* v. *Kaufman's Estate,* 230 Mich. 388; *Bishop* v. *Shurly,* 237 Mich. 76.      In a recent decision, Justice FELLOWS has reiterated the proposition of law applicable here, as follows:

"The fact that we would have reached a different conclusion than the jury is not controlling.     We should set aside a verdict, and only set one aside, when it is against the overwhelming weight of evidence." *McConnell* v. *Elliott,* 242 Mich. 145.

We are reluctant to do so, but we feel constrained to hold that, under the record presented to this court, the verdict must be allowed to stand.

The judgment of the circuit court is affirmed, with costs to the appellee.

FEAD, C. J., and FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.