15079

GRANT v. METROPOLITAN LIFE INS. CO.

(9 S. E. (2d), 41)

*Messrs. Elliott, McLain, Wardlaw & Elliott* and *Yancey A. McLeod,* for appellant,

*Messrs. Jack M. Rose* and *T. P. Taylor,* for respondent,

May 7, 1940.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In this case respondent seeks to recover the proceeds of a policy of life insurance in the amount of $580.00, issued by appellant on the life of one Walter Grant, respondent, being the beneficiary named in the policy.

The appellant admits the issuance of the policy, and that respondent is the named beneficiary therein, but pleads as a bar to a recovery a clause contained in the contract of insurance entitled "When Policy is Voidable", the pertinent portion being as follows: "If (1) within two years prior to the date of issue of this Policy the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician, unless it shall be shown by the Insured or any claimant that no such institutional, surgical, or medical treatment or attention was for a serious disease, injury, or physical or mental condition; or if (2) * * *; then, in any such case, this Policy shall, subject to the clause entitled Incontestability, be voidable by the Company, unless reference to such institutional, surgical, or medical treatment or attention, or * * *, is endorsed on this Policy by the Company. If this Policy does not take effect, or is voided by the Company, the Company will return the premiums paid."

Upon a trial of the case, appellant relied solely upon the clause above. It is not in dispute that appellant tendered to respondent the sum of $11.50, being the amount of the premiums paid on the policy of insurance, and is still ready and willing to refund said premiums.

Appellant assumed the burden of showing that the insured, Walter Grant, had been "a patient at" an institution for treatment of physical disease, and attended by a physician within two years prior to January 24, 1938, the date of the policy. It did not there rest content, for the record discloses that the insured was in the Veteran's Hospital, near Columbia, S. C., from September 15, 1936, to November 20, 1936, suffering from high blood pressure, with enlargement of the heart, and some failure of the heart muscles—in plain every day understandable language, he had serious heart trouble; and other complications not necessary to mention.

When the insured was discharged from the hospital on November 20, 1936, he applied to the Veteran's Administra-

tion for disability compensation, stating the nature of the disease on account of which claim was made as being: "Heart trouble, high blood pressure, arterioclerosis, kidney trouble."

The insured died at said hospital from "heart trouble" on June 18, 1938, a few days less than five months after the issuance of the policy, and it was from the proofs of death that appellant learned that the insured had been in a hospital and attended by physicians for a serious physical disease within the two-year period of "When Policy is Voidable."

In reply to the above the respondent testified that when the agent for appellant company took the application for the policy, he was informed that the insured had been in the Veteran's Hospital "for his teeth to be pulled and a plate to be put in", and that the agent "said it wasn't serious, if he had just had his teeth pulled and a plate put in, he wouldn't put it down." She also testified that the insured told the agent that his last illness was the flu. We think it well to quote the pertinent testimony of respondent in reference to the conversation between Dr. Abel, who the witness thought was the appellant's doctor, and the insured:

"Q. Tell us whether or not, after that, after the application was made, whether or not any doctor came to see your husband? A. Yes, sir; the doctor came out.

"Q. Did you know his name? A. Doctor Abel, I think.

"Q. Was the insurance company's doctor? A. Yes, sir; I think so.

"Q. Were you present when that examination was made? A. Yes, sir; I was there.

Q. Did your husband make any statement to Doctor Abel about it? A. He told him the same thing—he had been to the hospital for his teeth to be pulled out and had a new plate put in.

"Q. You say he told the doctor he had been to the hospital and had his teeth pulled out and plate put in? A. Yes, sir.

"Q. Did he tell the doctor about the influenza? A. He told him the last trouble he had was with the flu.

"Q. That the last illness he had was influenza? A. Yes, sir.

"Q. After that was the policy issued to you? A. Yes, sir.

"Q. The policy was issued to him? A. Yes, sir."

All of the above testimony by respondent was admitted over the objection of appellant.

When respondent closed her reply testimony, the appellant moved for a direction of verdict for that the cause of action was based on a contract of insurance in evidence which contained the "When Policy is Voidable" provision hereinabove set out. The motion was resisted on the ground of waiver, especially on the evidence that the appellant's doctor had examined the insured before the policy was issued.

In granting appellant's motion, the trial Judge stated in part:

"The question is not whether the man had the disease or not. The defendant raises the question that within two years he was in a hospital for a serious ailment, and there is no evidence to show that they waived that. The woman testified not only that her husband did not tell him what was the matter, but told him he had been there to have his teeth pulled and a plate put in, and that they said, Well, that that was not a serious thing. Thousands of people who are not veterans do not even go to the hospital to have that done. Veterans do because they get it done there for them."

"If there had been any evidence of waiver at all, I would let it go to the jury. I don't think there is any waiver at all. In fact, he misled them when he told them—he didn't tell them about panting, and all like that—he deliberately told them he had been there to have his teeth pulled out and a plate put in, when he must have known that was not the only thing the matter with him, because when he made his application for the benefit he didn't put down there that he had only had his teeth pulled out and plate put in."

"Gentlemen, I do not see any waiver in it. I listened carefully. I thought that woman, when she got on the stand, was

going to testify to something; but her testimony, instead of showing waiver, shows that the man either intentionally or unintentionally misled the agent and the doctor making the examination; and that there was not sufficient evidence of waiver to get around this distinct provision of the policy itself. Now, understand, this is a different kind of policy from those these other cases were decided on. This policy has this provision there."

A motion for a new trial was noted, and following argument thereon, the trial Judge granted a new trial because, as stated by him, there was some evidence of waiver, and waiver was a question for the jury to pass upon. He held "as a matter of law" he should not have directed a verdict.

While there are five exceptions to the order granting a new trial, there is only one question to be decided by this Court, to wit: Under the provisions of the policy, is there any evidence in the record that appellant waived its rights to declare the policy void?

We have hereinbefore briefly stated the testimony bearing on the issue of waiver, if there is such an issue in the case.

The appellant by its testimony established beyond a peradventure that within two years of its issuance of the policy of insurance, the insured had been an inmate of the Veteran's Hospital situate near Columbia, S. C., for the treatment of a serious physical condition. It also introduced evidence from which the only reasonable inference to be drawn is that the insured knew that he had a serious physical condition. When the insured informed the agent and the physician of appellant that he had been to this hospital for the purpose of having his teeth extracted and putting in a plate, and by his silence concealed the serious nature of his trouble, it amounted to a misrepresentation and/or a representation material to the risk. We are not here confronted with the claim that the appellant had actual knowledge of the serious physical condition of the insured within two years of the issuance of the policy, and fraudulently failed to endorse reference

thereto on the policy. The claim is that appellant had constructive knowledge, and waived it.

It is the duty of Courts to construe contracts, if ambiguous; and to enforce contracts deliberately entered into if such contracts do not contravene some positive law or rule of public morals. There is no pretense here that the clause of the contract under discussion is against public policy, or that it is not valid. The sole position of respondent is that there is sufficient evidence of waiver to make it an issue for the jury to pass upon.

We are not unacquainted with the established principle in this State than an examination of the insured by a physician chosen by the insurance company is some evidence of one of two things: either that the alleged disease did not exist or that its existence was known to and waived by the insurer. Citation of authority is unnecessary. But this principle has been invoked entirely in cases wherein the issue was as to the "good health" of the insured either at the time of the examination, or when the policy is delivered. The "sound health provision" clause has been supplanted or enlarged upon (the policy does not appear in the record) by the clause herein set out—a valid, and therefore enforceable, clause.

Whether one applying for life insurance has within a two-year period been treated for a serious ailment is material to the risk. A thorough physical examination by a physician would not disclose this fact. It is upon the theory that if one is not in "sound health" (see *Nix v. Sovereign Camp, W. O. W.*, 180 S. C., 153, 185 S. E., 175, for a definition of the term "good health" as used in insurance policies) an examination by a physician will disclose such condition to exist; and therefore, either the alleged disease did not exist or that its existence was known to and waived by the insurer. While the record leads to the conclusion that only a superficial examination of the insured was made by Dr. Abel, the physician employed by appellant, yet

as above stated, no amount of diligence on his part in making a physical examination of the insured would have disclosed that the insured had been treated at the Veteran's Hospital for a serious disease or ailment. And the statement made by the insured to the agent of the appellant, and to Dr. Abel, its physician, that he had been in the hospital to have his teeth extracted, and a plate put in, especially when a great number of War Veterans have gone to the Veteran's Hospital for this sole purpose, could not be any notice to them that he had been in the hospital for a serious physical condition.

We can reach no other conclusion than that the trial Judge ruled correctly in the first instance in directing a verdict in favor of the appellant; and that he erred in granting the motion for a new trial.

The case is remanded for entry of judgment in favor of appellant on the contested portion thereof.

Mr. Chief Justice Bonham, Messrs. Justices Fishburne and Stukes and Mr. Acting Associate Justice Wm. H. Grimball concur.

On Petition for Rehearing

Denied May 27, 1940

*Per curiam.*

The only issue in this case was whether there was any testimony tending to prove that there had been a waiver of purely a contractual limitation of liability during the time specified, to wit, within two years of the issuance of the policy of insurance. This was the theory upon which the case was tried and upon which the Circuit Judge granted, first, a direction of verdict, and thereafter a motion for a new trial.

We find in the record no evidence of such waiver.

Let this order on petition for rehearing be published with the opinion.

Petition refused.

Mr. Chief Justice Bonham, Messrs. Justices Baker, Fishburne and Stukes and Mr. Acting Associate Justice Wm. H. Grimball concur.