Louise M. Brown, Respondent, v. Metropolitan Life Insurance Company, a Corporation, Appellant.—151 S. W. (2d) 499.

Springfield Court of Appeals.  May 20, 1941.

316

*Fordyce, White, Mayne, Williams & Hartman, Oliver & Oliver,* and *Harry Cole Bates* for appellant.

No appearance for respondent.

FULBRIGHT, J.—This is an appeal from a judgment on an insurance policy, rendered in the Circuit Court of Iron County, in favor of plaintiff for the sum of $278.20.

Plaintiff's petition is in conventional form. The answer is in substance, (1) a general denial; (2) as a further answer defendant sets out the following provision in the policy:

"WHEN POLICY IS VOIDABLE. If (1) within two years prior to the date of issue of this Policy the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician, unless it shall be shown by the Insured or any claimant that no such institutional, surgical, or medical treatment or attention was for a serious disease, injury, or physical or mental condition; or if (2) prior to such date of issue the Insured has been rejected for life insurance by this or any other insurer; then, in any such case, this Policy shall, subject to the clause entitled Incontestability, be voidable by the Company, unless reference to such institutional, surgical or medical treatment or attention, or such prior rejection, is endorsed on this Policy by the Company. If this Policy does not take effect, or is voided by the Company, the Company will return the premiums paid."

It then alleges that within two years of the issue of the policy insured was a patient in an institution for treatment of physical disease or was attended by a physician; that said facts existed within one year next before the issuance of the policy; that no reference to such

institution, treatment or attention was endorsed on the policy; that because of said facts the policy was voidable within one year after its issue and within that period defendant declared same to be void, and tendered to plaintiff the sum of $11.75, received as premium payments on said policy.

As a further answer defendant pleaded the "*When Policy is Voidable*" clause; alleged that in the application certain questions were set out with the answers made by insured, which answers were alleged to be false; that insured had certain diseases at the time of making the application; was suffering from a spinal disease—tuberculosis of the spine; that she had been under treatment in the Cleveland Charity Dispensary within the five year period before making the application; that at the time of making the application she had a physical defect and was suffering from a growth or tumor; that within three years next before signing said application she had been under the care of physicians and treated for disease; that defendant would not have issued the policy had the facts been disclosed, or had it known said representations were false; that said representations were fraudulent, made for the purpose of defrauding defendant and did defraud and deceive.

Plaintiff's reply is a general denial coupled with a specific denial that insured made any false or untrue representations at the time of the issuance of the policy and a further denial that within two years prior to the date of the issuance, insured was or had been a patient at or an inmate of an institution for treatment of physical or mental disease or had undergone any surgical operation or was attended by any physician, for any serious disease; and specifically denies that she was asked the questions or gave the answers as set out in defendant's answer.

The facts are as follows: On the 23rd day of August, 1937, defendant issued the policy sued on upon the life of Virginia L. Montgomery in the sum of $260. Insured died on July 19, 1938, and her mother, Louise M. Brown, the beneficiary instituted the suit after furnishing defendant proof of the death of the insured. Within two years prior to the date the policy was issued insured was a patient at and an inmate of an institution for the treatment of physical or mental disease, and was, within the said two year period attended by two physicians. No reference to such institution, surgical or mental treatment or the fact she was attended by such physicians is or was endorsed on the policy sued on herein, which was introduced in evidence. Defendant declared the policy void prior to the filing of the suit and tendered to the plaintiff the total amount of the premium that had been paid together with accrued interest thereon, amounting in the aggregate of $13.75. Tender was also made in the petition filed and the sum of $13.75 was paid into the registery of the Circuit Court at the time of the trial. The tender was refused by plaintiff.

Plaintiff, to sustain her cause of action offered the policy sued on and the death certificate which shows that the principal cause of the death of the insured, on July 19, 1938, was tubercular meningitis.

The evidence on the part of the defendant tended to show that the insured had been a patient in St. Vincent Charity Hospital in Cleveland, Ohio, April 6, 1936; was X-rayed on April 7, thereafter, and found to be suffering from caries of her lumbar spine. The records of that institution, which were introduced, also show that on April 23, 1935, the patient had a deformity known as kyphosis of the lumbar spine, along with compensatory scoliosis of the dorsal vertebrae. Similar findings were noted on June 5, 1937, when X-rays were taken, together with a small abscess over the side of an old scar of previous abscess. On June 12, 1937, the abscess ruptured spontaneously and wound was dressed, and again dressed on June 17, 1937.

The deposition of Dr. Barber, surgeon in charge of orthopedics at St. Vincent's Charity Hospital, and an instructor in orthopedics at Western Reserve University and Lakeside Hospital in Cleveland, testified that the X-ray and records had been made at his direction; that when he examined the insured April 7, 1936, he found her condition grave and the disease with which she was afflicted serious; that she was suffering from caries of her lumbar spine, complicated by systemic syphilis; that caries of the spine is a disease tending materially to shorten life; that the patient was subsequently treated at the hospital and that he interpreted the X-rays taken June 7, 1937, and found a very extensive destructive process involving the entire lumbar spine, producing an extreme deformity in the form of a very marked kyphosis, as well as a scoliosis of the lumbar region, with an associated scoliosis in the thoracic region of the spine; that at least two and possibly three of the bodies of the lumbar spine had been almost entirely destroyed by the disease process.

Dr. Peck, a graduate of Western Reserve Medical School and a member of the orthopedic department at Charity Hospital in Cleveland, testified that on June 5, 1937, he was assistant orthopedic surgeon at said hospital; that he examined and treated insured, a colored girl, at that time; that she was approximately 17 years old; that he first saw her April 1, 1935; again on June 5, 1937, June 12 and 17, 1937, all at Charity Hospital; that X-rays were made of her on June 6, 1937; that on that date he found she had a deformity known as kyphosis of the lumbar spine, along with compensatory scoliosis of the dorsal vertebrae; that she had a cold abscess in the lumbar region; that she also had tuberculosis of the lumbar spine with abscess formation in the lumbar region; that tuberculosis is a disease of a serious nature and one tending to materially shorten life; that in his opinion in both June and August, 1937, she was suffering from tuberculosis of the spine and was definitely not in sound health.

Plaintiff, in rebuttal, offered the evidence of several lay witnesses. The general purport of their testimony was that they knew the insured; that she worked as a domestic; that they noticed nothing wrong with her; that she was of a cheerful disposition; that the mother and grandmother testified that the agent who took the application did not ask her any questions at the time. The mother, Louise M. Brown (plaintiff) testified that deceased, the insured, was her daughter; that at the time insured made the application she signed some paper but it was the policy and not the application; that insured did not answer any questions; that Dr. Barron examined her after the policy was taken out; that she was not feeling well; that her daughter was going to school in Cleveland, Ohio, in 1937; that she attended school there from 1935 to 1937; that she returned to Fredericktown in 1938; worked at a job in Fredericktown; that she worked at one place for nine months, then the other place; that she was never sick before she took sick in 1938; the doctor treated her about two days; that she had the measles when she was little; she never complained—danced and played on roller skates; that she took insured to the hospital in 1926 to find out whether she had curvature of the spine; she was complaining about a fall she had; that she was examined in 1937 by Dr. Barron, Metropolitan Life Insurance Company doctor at Fredericktown, at the time the policy was issued. She further testified that she was not in Cleveland in 1935, 1936 or 1937, where insured went to school at John Hay High School and did not know whether insured went to the hospital in 1937. The testimony of the grandmother, Emma Brown was of similar import, except that insured "couldn't walk straight-up or stand up like any other 17 year old girl;" she also stated that insured did sign the application.

At the close of plaintiff's case defendant offered an instruction in the nature of a demurrer to the evidence, which was, by the court refused. A similar instruction was offered at the close of the whole case which the court refused to give.

Defendant's Assignment of Errors is as follows: "1. The Court erred in overruling defendant's demurrer to the evidence at the close of the whole case. 2. The Court erred in giving plaintiff's instruction No. 1. 3. The Court erred in holding and ruling, in effect, that the 'When Policy is Voidable' clause was meaningless and inoperative, when in truth and in fact, as well as in law, it is a simple, plain, unambiguous statement of a part of the contract of the parties, in no wise contrary to the public good, and, therefore, enforceable as written."

Plaintiff has not seen fit to furnish us with a brief and argument, but from the record it appears that she, as well as the trial court, proceeded on the theory that the *"When Policy is Voidable"* clause, contained in the policy, is void or is meaningless and inoperative. In addition to the above clause, the following pertinent provisions ap-

pear in the policy: "INCONTESTABILITY. This Policy shall be incontestable after it has been in force, during the lifetime of the Insured, for one year from its date of issue, except for nonpayment of premiums. OPTION TO SURRENDER WITHIN TWO WEEKS. If this Policy is not satisfactory it may be surrendered for cancellation, within two weeks of its date of issue, at the District Office through which it was delivered, and the premiums paid will be returned."

It is undisputed that the policy sued on was issued August 23, 1937, on the life of Virginia L. Montgomery, the daughter of plaintiff, and in which policy plaintiff was the beneficiary; that the insured died on July 19, 1938, less than one year after the making of the application for and the issuance of the policy, and more than a month before the policy would have become incontestable; that said policy was declared void within one year next after its issue by defendant company, and tender made to the plaintiff herein of the sum of $11.75, the total amount received by defendant as premium payments upon said policy.

In passing upon the validity of the *"When Policy is Voidable"* clause, it must be borne in mind that the function of the court is to interpret and enforce the contract as made unless in conflict with our statutory law, or in contravention of public good, and unequivocal language is to be given its plain meaning, although found in an insurance contract. [State ex rel. N. Y. Life Ins. Co. v. Trimble, 306 Mo. 295, 267 S. W. 876; State ex rel. Park v. Daues, 316 Mo. 346, 289 S. W. 957; State ex rel. American Fire Ins. Co. v. Ellison, 269 Mo. 410, 190 S. W. 879; Prince v. Metropolitan Life Ins. Co. (Mo. App.), 129 S. W. (2d) 5; Adams v. Metropolitan Life Ins. Co. (Mo. App.), 74 S. W. (2d) 899.] The clause in question is specific and definite, simple and unambiguous. It is not in conflict with our statutory law and we can conceive of no theory upon which it could reasonably be held that it is in contravention of public policy. It is a contractual reservation of a right to avoid the policy, in either of two events contained in the clause, conditioned on the existence and affirmative proof of such fact or facts by the insurer. This clause makes material to the risk the question of whether the applicant for insurance has, within a two year period, "been a patient at or an inmate of any institution for the treatment of physical or mental disease or has undergone any surgical operation or has been attended by a physician . . .;" facts which the most thorough physical examination by a physician would not disclose. Apparently it has never been construed by an appellate court in this state, however, it has been passed upon by the higher courts of several of our sister states, and in each instance, so far as we have been able to learn, its validity has been upheld. It is our conclusion that the clause is valid and therefore enforceable. [Davis v. Metropolitan Life Ins. Co. (Ohio), 31 N. E. (2d) 93; Grant v. Metropolitan Life Ins. Co., 194 S. C. 25, 9 S. E. (2d) 41;

McDermott v. Metropolitan Life Ins. Co., 8 N. Y. Supp. (2d) 896, (Affirmed by the Appellate Division, 1st Department, N. Y., March 25, 1941, without opinion).]

The evidence offered by defendant discloses that the insured, within two years prior to the issuance of the policy, was examined and treated by physicians, at Charity Hospital, Cleveland, Ohio, on June 5, 1937, also on June 12 and June 17, 1937; two physicians connected with the hospital testified to having treated the insured during the month of June, 1937, for tuberculosis of the spine, one of whom testified that at least two and possibly three of the bodies of the lumbar spine had been almost destroyed by the diseased process. Both testified that the disease was a serious one, tending materially to shorten life, and that in their opinion the patient was, on August 13, 1937, suffering from a well advanced tuberculosis of the spine. The testimony of these physicians is set out more fully in the statement.

It therefore appears that the insured was a patient at an institution for the treatment of physical disease and had been attended by at least two physicians, who within the two year period treated her for a serious disease. Since there was no endorsement on the policy of such attendance at the hospital and treatment by physicians, the defendant, by showing such attendance and treatment made out a prima facie case of breach of the policy. Whereupon, according to the terms of the policy, the burden shifted to plaintiff and it became incumbent upon her to show that the attendance or treatment was not for a serious disease. This she has failed to do. It is true, plaintiff, as well as the grandmother of deceased, and other laymen who knew her, testified that she worked as a domestic; that they noticed nothing wrong with her; that she appeared to be in good health: that she was of a cheerful disposition; danced and played on roller skates, and that they had never heard her complain. This is not sufficient. A lay witness may testify as to obvious symptoms, apparent health and physical condition of a person, based upon facts within his knowledge, but such testimony does not raise an issue as to whether such person was, in fact, suffering from a disease or ailment, such as tuberculosis of the spine, the existence of which can only be determined by a physician, upon a thorough examination based upon existing symptoms and necessary and proper tests. Where the question to be determined is whether or not a person has a serious disease or ailment, not discoverable by merely observing the outward appearance of such person, as in the instant case, plaintiff's evidence is without probative force. [Sharlach v. Pacific Mut. Life Ins. Co., 16 Fed. (2d) 245; Jefferson Standard Life Ins. Co. v. Pierce (Ky.), 95 S. W. (2d) 579; Aetna Life Ins. Co. v. Shipley (Tex.), 134 S. W. (2d) 342.]

It is obvious from the foregoing observations that the trial court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence at the close of the whole case. The judgment is therefore reversed. *Blair, P. J.,* and *Smith, J.,* concur.