## Eugenie Gambill, Appellee, v. Metropolitan Life Insurance Company, Appellant.

### Gen. No. 41,738.

Heard in the third division of this court for the first district at the June term, 1941. Opinion filed January 7, 1942.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant; NATHANIEL RUBINKAM and JOHN C. MELANIPHY, both of Chicago, of counsel.

HENRY M. HILTON and MEYER A. GINSBURG, both of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This action was instituted by Eugenie Gambill, as beneficiary under two industrial insurance policies issued by the Metropolitan Life Insurance Company, one on June 28, 1937 and the other on October 4, 1937, on the life of Rudolph Storch, her father. The cause was tried before the court, without a jury, who found the issues in favor of plaintiff and entered judgment against the defendant for $340.

The plaintiff in her statement of claim sets forth allegations concerning (1) the issuance of the policies, one for $342, and the other for $190; (2) the death of the insured on June 8, 1938; (3) that she is the named beneficiary in each of said policies; (4) that the pol-

icies were in full force and effect at the time of the death of the insured, and (5) the refusal of the defendant to pay. Defendant answered admitting the issuance of the policies, setting forth in defense the clause of the policy which provides that if within two years prior to the date of issue of the policy the insured has been a patient at or an inmate of, any institution for treatment of physical or mental disease, or has been attended by a physician, unless it shall be shown by the insured or any claimant that no such institutional or medical treatment or attention was for a serious disease, injury or physical or mental condition, the policy subject to the clause entitled incontestability, is voidable by the company, unless reference to such institutional or medical treatment or attention is endorsed on the policy by the company; that if the policy does not take effect, or is voided by the company, the company will return the premiums paid. Defendant further alleges that within two years prior to the date of issue of the policies sued upon, the insured had been a patient of an institution for treatment of physical or mental disease and had been attended by a physician; that it has not been shown by the plaintiff that such institutional and medical treatment and attention was not for a serious disease, injury or physical or mental condition; that by reason of the foregoing allegations the policies sued upon are void and the only liability of the defendant is the return of premiums paid which amount had already been tendered to the plaintiff and refused by her and which amount was also tendered in full satisfaction of defendant's liability under the policies sued upon. The defendant then set up the applications made to the defendant company and signed by the insured; that the answers set forth therein were false and untrue and constituted material misrepresentations and if the defendant company had known that such answers were false and untrue, it would not have issued the policies sued upon. It denied it was liable to the plaintiff in

any sum other than $30.10, which represented the premiums paid on the two policies. No reply was filed to this answer.

The facts as they appear from the evidence in this record are that on June 28, 1937, the defendant issued a policy of insurance in the sum of $342 to Rudolph Storch, effective upon payment of 45 cents weekly premium. On October 4, 1937, the defendant issued another policy of insurance in the sum of $190 to Rudolph Storch, effective upon payment of 25 cents weekly premium. The plaintiff, Eugenie Gambill, daughter of the insured, was the named beneficiary in both policies. The insured died June 8, 1938, less than one year after the date of the respective policies. The policies were issued without medical examination of the insured, and each policy provided:

"WHEN POLICY IS VOIDABLE. If (1) within two years prior to the date of issue of this Policy the Insured has been a patient at, or an inmate of, any institution for the treatment of physical or mental disease, or has undergone any surgical operation, or has been attended by a physician, unless it shall be shown by the Insured or any claimant that no such institutional, surgical, or medical treatment or attention was for a serious disease, injury, or physical or mental condition; or if (2) prior to such date of issue the Insured has been rejected for life insurance by this or any other insurer; then in such case, this Policy shall, subject to the clause entitled Incontestability, be void by the Company, unless reference to such institutional, surgical, or medical treatment or attention, or such prior, rejection, is endorsed on this policy by the Company. If this Policy does not take effect, or is voided by the Company, the Company will return the premiums paid." The incontestable clause is as follows:

"This Policy shall be incontestable after it has been in force, during the lifetime of the Insured, for one year from its date of issue, except for nonpayment of

premiums." All premiums were paid on each of the policies from the time of issue until the death of the insured, and total $30.10. Insured was 50 years of age. On May 21, 1937 (about a month prior to the first application) Dr. Margaret M. Buck attended the insured at his home; he was in bed with severe pain. He gave the doctor a history of being in the County Hospital two months previous where X-rays indicated renal calculi and that he had been passing blood in the urine off and on since 1932. The doctor made an examination after which she diagnosed a renal calculi (kidney stone) and advised his family to send him to the hospital. He was taken to the Jackson Park Hospital that day where upon further examination by the doctor, the urine showed albumin, and innumerable pus and blood cells; his blood pressure was 175 over 112, which was not normal for his age. This indicated a renal condition, or stones in the kidneys. He had no finances to remain in the hospital and the doctor recommended that he go to the County Hospital and continue to be hospitalized because of his serious condition.

On September 6, 1937 (about one month prior to the second application) Dr. Charles L. Schmidt attended the insured at his home; the doctor made an examination and urinalysis and diagnosed inflammation of the kidney or nephritis, which was a serious condition. The insured died on June 8, 1938 of cerebral hemorrhage.

It is contended that defendant having proved that the insured had been an inmate of a hospital and had been attended by physicians for a disease within two years prior to the issuance of the policies, the burden of proving such hospitalization and medical attention was not for a "serious disease" rested on the plaintiff. Plaintiff, to establish a *prima facie* case, introduced the policies in evidence and rested her case, and on behalf of the defendant testified to identify her

signature on the proof of death submitted to the company. Ethel Mahoney, record librarian of the Jackson Park Hospital, produced the hospital records pertaining to Rudolph Storch, which records were received in evidence and disclose history given by the insured to Dr. Sexton, the interne, on May 21, 1937, in which the insured stated that he had been troubled with dragging cramp-like pains in his right side since 1932, which pains would radiate to the back especially in the right lumbar regions; that he had passed stones and had had blood in his urine; that he had been in the County Hospital two months previous where X-rays disclosed shadows suggestive of stones. Also, Dr. Margaret M. Buck, a physician and surgeon practicing in Chicago since 1916, attended the insured on May 21, 1937. She found the insured in bed suffering severe pain as hereinabove stated, and was given a history by insured of having been in the County Hospital two months previous; that he had X-ray work done which indicated he had renal calculi, or stones in the kidneys. The doctor made an examination of his abdomen and right lumbar region. She found severe pains were radiating down the thigh where he was extremely sensitive. She made a diagnosis of renal calculi and sent him to the Jackson Park Hospital, where she continued her examination. A urinalysis disclosed albumin and innumerable pus and blood cells. His blood pressure was 175 systolic over 112 diastolic. It was not normal for his age. Upon these findings the doctor made a diagnosis of renal calculi, which is a serious disease or condition. Insured had no finances to remain under the doctor's care at the hospital and she recommended that he go to the County Hospital and continue to be hospitalized because he was in a serious condition. He left the Jackson Park Hospital on May 22, 1937.

Dr. Charles L. Schmidt, a physician and surgeon since 1908 testified, on behalf of the defendant, that

he was called to insured's home on September 6, 1937 and found the insured suffering from pain in the back. He made an examination of the insured and made a urinalysis which disclosed albumin. He made a diagnosis of inflammation of the kidneys or nephritis. This was a serious condition, and he gave him a diet and prescribed for him.

The defendant tendered in open court to plaintiff the sum of $32, being the amount of premiums paid with interest to date of trial, which tender was refused.

Reference to such institutional and medical treatment or attention so had by the insured was not endorsed on the policies, no endorsements of any kind being entered in the "space for endorsements." The defendant proved that the insured had been a patient at, or an inmate of, a hospital for treatment of a physical disease and had been attended by physicians within two years prior to the issuance of the policy.

Therefore, from the evidence introduced in the record by defendant it appears that: (1) on May 21, 1937, about one month prior to the issuance of the first policy and four months prior to the issuance of the second policy, the insured was (a) attended by Dr. Buck and (b) was an inmate of the Jackson Park Hospital on May 21st and 22nd of that year; (2) the history given by the insured disclosed that the insured was an inmate of the County Hospital two months prior to May 1937 where X-rays were taken which revealed shadows suggestive of stones; (3) on September 7, 1937, which was less than a month prior to the issuance of the second policy, the insured was attended by Dr. Schmidt.

It is contended by the defendant that under the terms of the policy, the burden of proving that such hospitalization and medical attention were not for a "serious disease" rested upon the plaintiff. The plaintiff presented no evidence upon this issue. It is pointed out that no reply was filed to the affidavit of

defense, and urged that under the rules of the municipal court (rule 26 (2) ) the matters therein alleged were confessed, and that it became the duty of the court, under the law, to find the issues for the defendant. Defendant cites *Davis v. Metropolitan Life Ins. Co.* (Ohio App.), 31 N. E. (2d) 98, where the court, in construing a policy similar to the one in question, said:

"Medical attendance within two years prior to the date of issue of the policy (June 4, 1937) having been shown by the defendant, it rested. In order to recover under the above-quoted terms of the contract, it then was incumbent upon the plaintiff to show that such medical treatment or attention was not for a serious disease.

"This plaintiff did not do. Instead, plaintiff moved for judgment and the trial court, erroneously refusing to consider and completely ignoring the terms of the contract, granted plaintiff's motion . . . the judgment of the said Municipal Court is reversed, for the reason that the burden of showing that decedent was not treated for a 'serious disease' rests upon the plaintiff under the terms of the insurance contract, and the court erred in rendering judgment for plaintiff on motion". Defendant further cites the case of *McDermott v. Metropolitan Life Ins. Co.* (Misc.), 8 N. Y. S. (2d) 896, where the court in reversing a judgment on a policy likewise similar to the one in question, said:

"In our opinion, under the new clause if the insurer shows attendance by a physician, or other breach of condition, and no reference to the condition by endorsement in the policy it establishes prima facie breach of the policy condition. The new agreement then requires the claimant to show that the treatment or attention rendered by the physician was not for a serious disease, injury, physical or mental condition."
This last mentioned case was unanimously affirmed

by the Appellate Division of the Supreme Court of New York, First Department. In *Grant v. Metropolitan Life Ins. Co.*, 194 S. C. 25, the trial court directed a verdict for the defendant upon a showing that the insured had been a patient in an institution for treatment for physical disease and attended by a physician within two years prior to the date of issuance of a policy similar to the one in the case at bar. Later the trial court granted a new trial on the ground that there was some evidence of waiver on the part of the defendant and that waiver was a question for the jury to pass upon. In reversing the trial court and remanding the cause for entry of judgment for the insurer, the Supreme Court held that failure to disclose the institutional and medical treatment, under this policy, amounted to a misrepresentation of facts material to the risk; that this form of contract is not ambiguous; that the contract is not against public policy or invalid; and that where one applies for life insurance and has been treated for a serious ailment within a two year period such treatment is material to the risk. And other decisions have been called to the attention of this court upon like questions as presented in this case.

Upon the showing of the attendance of the insured by Dr. Buck and his hospitalization in the Jackson Park Hospital, as above set forth, counsel for defendant moved the court to rule and here contends that the burden then rested upon plaintiff to prove that such medical attendance and hospitalization was not for a serious disease. The court ruled against this motion. For the reason of the ruling of the trial court on this motion, the defendant proceeded to prove that such hospitalization and medical attention was for a serious disease, as appears from the facts as set forth.

The plaintiff, however, points to the fact that Dr. Buck, called as a witness by defendant, revealed on cross-examination that she only saw insured on

May 21, 1937, that she asked him about a pain in his back, that as a result she diagnosed the insured's ailment as renal calculi, that she never confirmed her diagnosis by X-ray or otherwise, that she did not have the insured under her care long enough (less than 24 hours) to confirm her diagnosis. Further, that at the Jackson Park Hospital Dr. Buck made a gastrointestinal examination and found nothing wrong with the insured. Dr. Buck also made various examinations and tests and found nothing wrong with the insured. Plaintiff calls attention that the witness, Dr. Charles L. Schmidt, testified that he made a cursory examination upon the insured September 6, 1937 and that he diagnosed the illness as renal calculi, and that Dr. Schmidt did not remember what he did or what he prescribed, if anything; that he only saw insured on September 6, 1937, which date was taken from a record that he looked at one year before the date of his appearance in court.

The plaintiff in reply says that defendant cites the two-year clause in the policies and further says that the burden of proof shifts to the plaintiff upon the presentation of the hospital report, and cites a number of cases to support its contention, and contends that in each case cited by defendant the insured was treated from five to thirty times by a physician and treatment prescribed. It is pointed out that in the case at bar the insured was seen by two physicians; that each physician saw the insured once; and that neither physician prescribed or proved his diagnoses. The plaintiff contends that when defendant rested its case and the court ruled against it, that defendant waived any right to stand on the two-year clause in the policies by continuing to offer further proof; that under the two-year clause in the policies, if plaintiff had put on proof, she would have had to use the same doctors, same hospitals, reports, etc., to show that the insured did not suffer from a serious disease; and points out

that the trial judge commented on the shortness of the time the insured spent in the hospital (one day). Plaintiff further suggests that defendant made no effort to introduce records or X-rays from the County Hospital, since defendant knew none were ever taken or made, notwithstanding which defendant relied on the fact that in the history the insured received treatment and had X-rays taken at the County Hospital two months prior to May 1937. It is further suggested that the effort was made to prove that insured was suffering from a serious disease, but that nowhere or at any time have either Dr. Buck or Dr. Schmidt shown where any medicine was prescribed or treatment given; that Dr. Buck testified that she found nothing wrong with any of the organs of the insured, that pulse, temperature, respiration, etc. were all normal; that Dr. Schmidt was vague about all of his testimony and did not remember much, if anything, about any prescription or treatment. The case of *Freise v. Metropolitan Life Ins. Co.*, 206 Ill. App. 404, is cited by plaintiff for the rule that forfeiture of life insurance policies are not favored and will never be enforced unless the evidence is clear that such was the intention.

It is apparent from the facts appearing in this record that insured was suffering from some ailment and that it was necessary that the doctors be called in to pass upon his condition. The question here is whether the conditions of the policy were violated. We find from an examination of the policies that if within two years prior to the issuance of the policies, the insured had been a patient or inmate of any institution for treatment of physical or mental disease or had been attended by a physician, the contract is voidable unless (1) reference to such institutional or medical treatment or attendance has been endorsed on the policies or (2) unless it be shown by insured or any claimant that such institutional or medical treatment

or attention was not for a serious disease. The plaintiff cannot recover unless it appear that such medical treatment and attendance by physicians was not for a serious disease. The facts and evidence introduced established that insured was suffering from some ailment which required the attendance of two physicians who examined him, as we have already indicated, and advised hospitalization, as the result of which advice insured was taken to the Jackson Park Hospital. Then, insured being unable to pay the expense, he was advised to go to the County Hospital.

Under the circumstances, we are of the opinion that the court erred in finding for plaintiff and entering judgment on the finding. The judgment will be reversed and judgment entered in this court for defendant for the recovery of the costs.

*Judgment reversed and judgment for costs.*

BURKE, P. J., and KILEY, J., concur.