29595. METROPOLITAN LIFE INSURANCE CO. *v.* CRIDELLE.

Decided November 18, 1942.

*Beck, Goodrich & Beck,* for plaintiff in error.

*David S. Walker, R. O. Jackson,* contra.

SUTTON, J. Violette Cridelle, as beneficiary, brought suit against Metropolitan Life Insurance Company to recover under a policy of life insurance the sum of $370 and also to recover penalty and attorney's fees because of the alleged bad faith of the defendant in refusing to make payment as provided by the policy, which, under date of February 12, 1940, was issued to her deceased husband, Harry J. Cridelle. The defendant pleaded in bar of recovery, except as to the return of premiums paid, a provision of the policy as follows: "When policy is incontestable and when voidable. This policy shall be incontestable after it has been in force, during the lifetime of the insured, for one year from its date of issue, except for nonpayment of premiums. Subject to the foregoing provision, if (1) within two years prior to the date of issue

of this policy the insured . . has been attended by a physician, unless it shall be shown by the insured or any claimant that . . no such attention was for a serious disease . . this policy shall be voidable by the company, unless reference to such . . attention . . is indorsed on this policy by the company. Provided, however, that this policy shall not be voidable because of absence therefrom of indorsement referring to any information which was disclosed in a written application therefor. If this policy does not take effect, or is voided by the company, the company will return the premiums paid." It admitted that due proof of death. had been made, but set up that on specified dates the insured had been attended by a physician within two years previously to the date of issuance of the policy, and that no reference thereto had been made by indorsement on the policy or the facts shown in the written application therefor; that it had no knowledge of such facts until after the death of the insured on October 5, 1940, and upon receipt of the proof of death, from which it discovered for the first time that the insured died from a cancer of the rectum and colon, and that on November 28, 1940, it declared the policy void and so notified the plaintiff beneficiary and tendered her the amount of premiums which had been paid and was still ready and willing to refund the said amount of $8.75. The jury returned a verdict for the plaintiff for the face value of the policy and also for 25 per cent. penalty and $50 attorney's fees. The defendant filed a motion for new trial on the usual general grounds, and by amendment added several special grounds. The court overruled the motion, and the exception here is to that judgment.

The evidence was substantially as follows: The insured had been treated for piles in December, 1939. On January 27, 1940, he consulted Dr. George L. Walker in Griffin, Georgia, complaining of what the doctor said the insured thought was hemorrhoids. The doctor found a tenderness and a hard mass in the insured's rectum, but made no diagnosis, and referred him to Dr. George' Eubanks, a specialist in Atlanta, Georgia. Dr. Walker testified that he did not think at the time that the mass in the rectum was a serious disease or cancer, but that he was not a specialist and did not know, and for that reason referred the insured to one who he thought could properly treat and relieve him. Dr. Eubanks testified that he attended the insured on February 3, 1940, at his

office between 11 and 1 o'clock; that the insured told him he had had some diarrhea for a period of two months, his stool being sometimes liquid, sometimes hard, usually small in amount, accompanied by some pain; that he, the witness, made an examination of the lower bowel through an electric mid-light and that it disclosed that he had a large tumor or mass seven inches above the analorifice, which filled the entire lower pelvis, involving the line of his rectum and over the layer of the wall of the bowel; that, unknown to the insured, he took out a section of this growth with an instrument and sent it to Dr. E. L. Bishop and his report showed cancer; that "This being a bulk tumor, it may have been present for several weeks. I can say that definite. It was a serious condition and one likely to result in death. . . I did not advise Mr. Cridelle on that occasion [February 3, 1940] as to his condition. . . I did not advise Cridelle at that time to submit to a surgical operation. I saw him again a second time on February 6th. At that time I had received a report from Dr. Bishop. . . Based on my examination and the report I received from Dr. Bishop I advised against a surgical operation. The trouble he had when he came to see me on February 6th was the same trouble he had when I saw him the first time on February 3rd. He only had one disease, and it was a serious disease. I advised against an operation, because I considered his condition utterly hopeless to any type of treatment, and I felt that he was a man in very moderate circumstances and his widow would need what little funds he had after his death, which could not be long delayed. The fact that Cridelle was suffering from the disease I have just described, it would be material information to any insurance company in accepting or rejecting him as a risk for life insurance. . . If it was known, no insurance company in the world would have him. . . To my knowledge he did not know what he had until I made an examination. . . As far as I am concerned, I never did tell him his trouble. I never tell a patient with a cancer. . . He was beyond treatment. I felt sorry for him. It was a hopeless case."

It further appeared from the evidence that on February 3, 1940, the insured made a written application for a policy of insurance with the defendant company. Albert Fortson, agent for the company, filled out the blank as the insured answered, and

to certain questions the insured answered that he "had not been under the care of a physician within the past three years." His wife, the plaintiff, testified that he could read and write, and it does not appear that any effort was made to prevent him from reading the written application when filled in. In the application which he signed was the following provision: "Notice. Information given to an agent in answer to the foregoing questions which is not written on this application before signature by the applicant will not be binding on the company. No agent has authority to waive a true and complete answer to the foregoing questions or to bind the company in any way contrary to this notice." It is shown by the evidence that this application was made on Saturday night after the insured had visited Dr. Eubanks about noon of the same day. Thereafter, under date of February 12, 1940, the policy was issued, and was delivered to the plaintiff at her home. In the meantime, on February 9, 1940, the plaintiff had been informed by Dr. Walker from a report made to him by Dr. Eubanks that the insured was suffering from cancer of the colon, and she testified that she then informed her husband, the insured, of his true condition. She testified that in a short time thereafter the agent came to collect and she told him that the insured had learned that he had a cancer, and that they wanted to know whether to turn in the policy, and that the agent told her it was taken out in good faith and that he did not see any reason why he should not collect on the policy; that she told him she was not able to keep up a policy that would not be of any service, wanted to return it if he would take it, and that he said he did not see anything in the world to keep her from collecting on it. The agent testified that the insured asked him if the policy would be paid in the event of his death, and that the witness said if it was written in good faith it would be, and that if he lived over a year the company would have to pay it, and if not paid the premiums would be returned; that this conversation was after the policy had been written; that he did not think that either the plaintiff or the insured offered to return the policy to him, and that agents have no authority to pick up a policy or to refund on one, the manager of the district office at LaGrange, Georgia, being the one to do that. Among the provisions of the policy, which was introduced in evidence, and in addition to the

"when voidable" clause, were the following: "This policy includes all matters printed or written by the company on this and the following pages and constitutes the entire agreement. Its terms can not be waived by any agent and can not be changed except by indorsement hereon signed by the secretary." "Option to surrender within three weeks. If this policy is not satisfactory it may be surrendered for cancellation, within three weeks from its date of issue, at the district office through which it was delivered, and the premiums paid will be returned." No indorsement was made on the policy as to the insured having been attended by a physician at any time, and no such information was shown in the written application for the policy. It was undisputed that the insured died on October 9, 1940, from cancer of the colon; that the defendant tendered to the plaintiff the amount of premiums paid; that due proof of death was furnished; that under date of November 28, 1940, the defendant in writing notified the plaintiff that under the provisions of the policy it was thereby voiding the policy.

The provision of the policy here involved appears to be a substitute for the "sound health" clause heretofore found in the defendant's industrial policy. While it comes before this court for the first time for consideration, we have had occasion to construe a policy which contained a provision that there would be no liability if, before the issuance of the policy, "the insured . . has been . . attended by a physician, . . unless it be shown by the claimant that no such . . ' medical attention was for a serious condition," which provision was upheld as a valid contractual obligation between the parties. See *National Life &c. Ins. Co.* v. *Harris,* 64 *Ga. App.* 136 (12 S. E. 2d, 419). The present provision has been construed in a number of foreign jurisdictions, and in all of the cases we have been able to locate in a thorough search it has uniformly been ruled that it is a valid and enforceable contractual obligation, and, in effect, that it makes material to the risk the question whether the applicant for insurance has, within the two-year period preceding the date of the issuance of the policy, placed himself in any position guarded against by the provision, and that where so shown the defendant may avoid the policy, not merely by affirmative election to do so during the lifetime of the insured, but even after the death of the insured when suit is brought on the policy, if the incontestible clause has not come into

operation, where no indorsement of such fact of attendance by a physician, as here involved, is made upon the policy or the information shown in the application therefor, and recovery by the plaintiff will be barred, except as to the amount of premiums paid, unless the insured, when the company declares the policy void in his lifetime, or the insured's beneficiary, after his death, shall carry the burden, which rests upon him, of showing that the attendance within the stated period was not for a serious disease. Davis v. Metropolitan Life Insurance Co. (Ohio App.), 31 N. E. 2d, 98; Baranowicz v. Metropolitan Life Insurance Co., 66 Ohio App. 444 (34 N. E. 2d, 987); Gambill v. Metropolitan Life Insurance Co., 312 Ill. App. 538 (38 N. E. 2d, 827); Rakowski v. Metropolitan Life Insurance Co., 313 Ill. App. 579 (40 N. E. 2d, 617); Grant v. Metropolitan Life Insurance Co., 194 S. C. 25 (9 S. E. 2d, 41); McDermott v. Metropolitan Life Insurance Co., 8 N. Y. Supp. 2d, 896; Frieberg v. Metropolitan Life Insurance Co., 24 N. Y. Supp. 2d, 777; Baum v. Metropolitan Life Insurance Co., 144 Pa. Super. 37 (19 Atl. 2d, 486); Russo v. Metropolitan Life Insurance Co., 147 Pa. Super. 210 (24 Atl. 2d, 167); Brown v. Metropolitan Life Insurance Co. (Mo. App.), 151 S. W. 2d, 499; Prilleux v. Metropolitan Life Insurance Co. (La. App.), 4 So. 2d, 768. The clause in question is not in conflict with our statutory law, and we can conceive of no theory upon which it could reasonably be said that it is in contravention of the public policy of this State, and we hold as ruled in the cited cases that the clause is valid and enforceable, giving the defendant the right to avoid the policy under the conditions named, not merely by affirmative election before the death of the insured, but when attacked by a suit, provided that the incontestability provision has not come into operation.

It conclusively appears from the evidence here that the policy was issued under date of February 12, 1940, and that on February 3rd and February 6th, 1940, within two years previously to the date of the issuance of the policy, the insured had been attended by Dr. George Eubanks, a specialist, and on January 27, 1940, within the same period, had been attended by Dr. George L. Walker, having previously, in December, 1939, been treated by Dr. H. C. Ellis "for piles." It further appears from the evidence without conflict that no indorsement of the fact of attendance by

a physician was made on the policy or any such information given in the written application signed by the insured on the night of the day, February 3, 1940, when he was attended about noon by Dr. Eubanks. In these circumstances the policy was voidable, that is, subject to being declared void by the insurance company under the conditions named, leaving it liable only for the return of the amount of premiums paid, unless the plaintiff carried the burden of showing that the insured had not been attended for a serious disease. The plaintiff failed to carry such burden and, on the contrary, the evidence for the defendant conclusively established that the insured had been attended for a serious and fatal disease, cancer of the colon, a short time before the policy was issued. It is true that no treatment was given the insured, but in receiving advice against an operation for what his physician knew to be cancer he was no less attended for a serious disease than if the physician had affirmatively treated him or operated upon him.

It is urged by the defendant in error that it may well be found by a jury that the insured did not act fraudulently in his application for and acceptance of the policy, but good or bad faith of the insured is not here involved. The parties entered into a contractual obligation as to their respective rights. Though his answers were filled in the application by the company's agent, he was able to read and write, and no fraud was practiced on him. He was able to contract, and by accepting the policy he is chargeable with knowledge of all of its terms and by them he is bound.

Nor is the plaintiff entitled to claim waiver or estoppel as against the defendant by reason of the fact that, as she claims, its agent was informed, after the issuance of the policy, that the insured had learned that he was afflicted with cancer and would be willing to surrender the policy if desired by the agent and was told that as it was applied for in good faith no such action was necessary. Both in the written application and in the policy the insured was informed of the limitations of the agent, and, no fraud being shown, he is bound thereby. *Reliance Life Insurance Co.* v. *Hightower,* 148 *Ga.* 843 (98 S. E. 469) ; *New York Life Insurance Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183) ; *Davis* v. *Metropolitan Life Insurance Co.,* 161 *Ga.* 568 (131 S. E. 490).

Under the provisions of the policy, the facts shown, and the authorities hereinbefore mentioned, a verdict was demanded as a matter of law in favor of the defendant. Consequently, the court erred in overruling the defendant's motion for new trial on the general grounds. Under this ruling it is deemed unnecessary to pass on the special grounds of the motion.

*Judgment reversed. Stephens, P. J., concurs. Felton, J., concurs specially.*

FELTON, J., concurring specially. I agree that the first provision attached to the incontestable clause is valid and binding on an insured and his beneficiaries, where, as in this case, the disease attended by a physician within the stated time contributed to or caused the death of the insured. Whether such a provision would be against public policy as to a disease which did not contribute to or cause the death of the insured is not at issue in this case. See *Fowler* v. *Life & Casualty Insurance Co.,* 59 *Ga. App.* 530 (1 S. E. 2d, 595), and cit.