29971. METROPOLITAN LIFE INSURANCE CO. *v.* ROWE.

*Smith, Smith & Bloodworth, Croom Partridge,* for plaintiff in error.   *William F. Buchanan, Mary J. Payne,* contra.

Felton, J.   Fannie Rowe sued the Metropolitan Life Insurance Company on a life-insurance policy issued by the defendant on the life of Pricilla Head, in which plaintiff was named as beneficiary. The jury found for the plaintiff and the defendant excepted to the overruling of its motion for new trial.

The policy contained the following provision: "This policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, except for non-payment of premiums.   Subject to the foregoing provisions, if within two years prior to the date of issue of this policy, the insured has received institutional, hospital, medical, or surgical treatment or attention, and the insured or any claimant under the policy fails to show that the condition occasioning such treatment or attention was not of a serious nature or was not material to the risk, this policy shall be voidable by the company either before or after any claim, unless reference to such institutional, hospital, medical, or surgical treatment or attention is endorsed on this policy by the company; provided, however, that this policy shall not be voidable because of absence of endorsement referring to any information which was disclosed in a written application for this policy."   The policy was dated March 23, 1942.   The insured died on April 31, 1942.   Proofs of death introduced by the defendant showed that the cause of death was coronary occlusion, and that Dr. M. A. Thomas attended insured from August 14, 1940, to August 22, 1940, for varicose ulcer, hypertension, and nephritis.   The certificate contained the statement that it was agreed that it should be considered as part of the proofs of death.   The facts with reference to such attendance by Dr. Thomas were not disclosed in the written application for the policy, or endorsed on the policy.

The statements of fact contained in the proofs of death as to the attendance by Dr. Thomas were binding on the plaintiff, in the absence of rebutting evidence.   Insurance Co. *v.* Newton, 89 U. S.

194

(22 Wall.) 32 (22 L. ed. 793); 2 Wigmore on Evidence (2d ed.), 564, 570; 8 Couch on Insurance, 7218, § 2227; *Cotton States Life Insurance Co.* v. *Edwards,* 74 *Ga.* 220; *Fair* v. *Metropolitan Life Insurance Co.,* 5 *Ga. App.* 708 (63 S. E. 812). Particular attention is called to Thornell *v.* Missouri State Life Insurance Co. (Tex. Com. App.) 249 S. W. 203, and the authorities there cited. See also Hubbell *v.* North American Union, 230 Mich. 668 (203 N. W. 477); Walker *v.* National Life etc., Co. (Mo. App.) 130 S. W. (2d) 668; Fields *v.* Equitable Life etc., 195 N. C. 262 (141 S. E. 743); Supreme Forest Woodmen Circle *v.* Garcia (Tex. Civ. App.) 103 S. W. 2d, 1108.

The plaintiff testified, in substance, that in August, 1940, the insured, who was her mother, had a small place on her leg about the size of a dime, and Dr. Thomas bandaged it up with a gelatin cast; that he did not give her any medicine; that he got some stuff from the drug-store and heated it and put the cast on it just above the ankle; that the doctor told her it was a varicose ulcer, and to stay in bed and not eat any salt, and not to drink any water with salt in it; that that was the only instruction he gave her, and he did not give any prescriptions; that the ulcer got well in two or three weeks; that the insured looked after a nine-room house, did the washing, made the beds, tended the chickens and garden, looked after claimant's baby after claimant went back to teaching school, and worked odd days for a white lady; that when the doctor was treating her mother he did not say anything about her having any other disease; that he said that people having children might get up too early and stand on their feet a lot and have varicose ulcers; and that she was under the care of a doctor for six weeks. Dr. Hubert Rawiszer testified for the defendant, that hypertension is blood pressure that is higher than normal; that nephritis is Bright's disease; that they are serious diseases; that both are likely to cause death; that a coronary occlusion is the closing of a blood vessel which is generally caused by a blood clot that has become detached from its original site; that a blood clot could be made by an injury, an ulcer, or drugs that cause coagulation of the blood, or a sudden change of temperature, or a varicose ulcer; that a varicose ulcer is a very serious thing; that the principal treatment for hypertension is rest in bed, sometimes medicine or taking away salt, and, if there is a swelling, fluids; that if a person died on April 21, 1942, having

been treated for varicose ulcer, hypertension and nephritis, in August and September, 1941 [1940], there could be some other cause for that death at that particular time; that if there was no evidence of any treatment for hypertension and nephritis between August and September, 1941, and April 21, 1941, it would be one of the causes of the death, or the coronary occlusion or thrombosis; that if that person after being treated for those diseases continued to do not only normal but an abnormal amount of work, and had no medical treatment during that time, that would be detrimental to her condition, and it would probably hasten the death; that to determine whether one has nephritis a test of urine is necessary, and to determine whether one has high blood pressure a blood-pressure test is necessary.

The proofs of death unquestionably showed medical attendance and treatment for a disease. This court has upheld similar provisions in insurance policies where the attendance or treatment within the time provided was for a disease which contributed to or caused the death of the insured. *Metropolitan Life Insurance Co.* v. *Cridelle,* 68 *Ga. App.* 353 (22 S. E. 2d, 771) ; *National Life &c. Insurance Co.* v. *Harris,* 64 *Ga. App.* 136 (12 S. E. 2d, 419). This court has not gone further in the two above-named cases in the definition of the words "serious" or "material to the risk." A consideration of the purpose of these new provisions would seem to indicate that they mean that the insured must not have a disease, at the time the policy is issued, which causes or contributes to the death. The new provisions replace the old "sound-health" clauses, and their interpretation does not follow the rationale of the cases voiding policies obtained by fraud. In the latter cases a contract never exists when, through ignorance of the insured's condition or treatments, the company issues a policy it would not have issued if it had known the facts, and this whether the disease contributed to or caused the death or not. The provision we are now considering is intended to exclude liability in a case where the insured has been treated for a disease within the time named, and is afflicted with that disease at the time the policy is issued, and such disease contributes to or causes the death. If it does not contribute to or cause the death, it can not be said to be "serious" or "material to the risk," in the sense in which the terms are here used, because full protection is given the insurance companies, and injustices to

the insureds or their beneficiaries are prevented by this construction. For instance, it does not seem to be the intention of the provision under discussion to void a policy where an insured had been treated for pneumonia within the two years and had entirely recovered, and died from an appendix operation or train wreck. See *Fowler* v. *Life & Casualty Insurance Co.*, 59 *Ga. App.* 530 (1 S. E. 2d, 595) ; *Gray* v. *Life & Casualty Insurance Co.*, 48 *Ga. App.* 80 (171 S. E. 835) ; *Life & Casualty Insurance Co.* v. *Carter*, 55 *Ga. App.* 622 (191 S. E. 153). Despite this, however, the claimant in this case failed to carry the burden of proving that the disease for which the insured was treated did not cause or contribute to the death. There is no evidence that Dr. Thomas did not examine the insured's urine or test her blood pressure. The fact that he did not prescribe medicine or tell her what her trouble was would not be sufficient to prove that the treatment was for varicose ulcer and nothing else. Having failed to carry this contractual burden by which the plaintiff was bound, a verdict in her favor was unauthorized. The court erred in overruling the motion for new trial.

The question whether the evidence demanded a finding that the policy was procured by fraud is not passed on.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*